### UNITED STATES FIDELITY & GUARANTY, Plaintiff,

v.

### James TOWARD, Rosario Toward, etc.; The Glendale Montessori School, Inc.; Brenda Williams; Linda Cooke; et al., Defendants.

#### No. 89–14048–CIV–JAG.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

March 27, 1990.

John Richardson and Clark Smith, Paxton, Crow, Bragg, Smith & Keyser, P.A., West Palm Beach, Fla., for plaintiff.

Roy Jordan, Jr., Jordan & Stinson, P.A., West Palm Beach, Fla., for defendants James Toward, Rosario Toward and The Glendale Montessori School, Inc.

Louisa Smith–Adam, West Palm Beach, Fla., for Paradise, Kaye & Doe.

Fred A. Hazouri, West Palm Beach, Fla., for Missimer.

Dennis Vandenberg, West Palm Beach, Fla., for Cooke.

Brenda Williams, Pembroke Pines, Fla., pro se.

Donald N. Watson, Stuart, Fla., for Henning.

Joseph K. Mannikko, Fraiser & Mannikko, Port St. Lucie, Fla., for Ulanos.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the various motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 by the parties to this action.

The insurer plaintiff has filed this declaratory action to determine its rights under a liability policy. James and Rosario Toward took out a policy as operators of a school. Allegedly, certain teachers at the school then molested the pupils. The parents of the pupils and the molested children filed several lawsuits in state court. This action followed.

By prior order entered on September 19, 1989, this court made the following rulings: (a) there was a case and controversy as to those plaintiffs who had actually filed suit in state court, (b) a declaration of the insurer's coverage under the policy was not ripe, and (c) abstention was improper.

This court invited Rule 56 motions, which were subsequently filed by all parties, upon six issues:

(1) the insurer's duty to defend in the state proceedings,

(2) the plaintiff's claim and the defendants' counterclaim involving whether the Glendale Montessori school is an insured under the contract,

(3) whether the policy's coverage of an "occurrence" includes those factual allegations made in the state complaints,

(4) whether the state plaintiffs are "persons" under the policy,

(5) whether the named defendant teachers in the state suits are "employees" under the insurance policy taking the allegations of the state complaints as true, and

(6) whether there is a public policy rationale barring recovery against an insurer taking the allegations of negligence in the state complaints as true.

In determining an insurer's duty to defend, a court must look to the allegations in the complaint(s) against the insured. *See* Order, Sept. 19, 1989, at 5. The affected families have sued the defendants in state court under the following theories:

(a) *the Kayes*

Counts I, II, and III—negligent hiring and negligent supervision by the school, James Toward, and Rosario Toward,

Count IV—intentional tort of battery by Brenda Williams

(b) *the Paradises*

Counts I, II, and III—negligent hiring and negligent supervision by the school, James Toward, and Rosario Toward,

Count IV—negligent supervision by Brenda Williams

Count V—negligent supervision by Linda Cooke

Count VI—negligent supervision by Cindy Dobens

Count VII—negligent supervision by unknown employee Jane Doe

(c) *the Missimers*

Count I, II, and III—negligent hiring and negligent supervision by the school, James Toward, and Rosario Toward

Count IV—intentional tort of battery by Brenda Williams

Count V—intentional tort of battery by Linda Cooke

(d) *the Ulanos*

Count I, II, and III—negligent hiring and negligent supervision by the school, James Toward, and Rosario Toward

Count IV—negligent supervision by Brenda Williams

Count V—negligent supervision by unnamed employees Jane Doe and John Doe

■ The first inquiries are the scope of the insurer's duty to defend and the term "occurrence" as defined in the subject policy. As to the personal injury section of the contract, the relevant section is the *"Broad Form Comprehensive General Liability Endorsement"*. (emphasis added). The insurer agreed in Section II(A), as follows:

The company [USF & G] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury ... to which this insurance applies, sustained by any person ... and arising out of the conduct of the named insured's business, ... and the company shall have the right and the duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false, or fraudulent, ...

The insurer also agreed to provide coverage under the above section for each "occurrence". The term is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Based on the allegations of the state complaints and the policy language, the term "occurrence" includes the claims of negligence in the state complaints. The key word in the definition is "accident". The phrase "including continuous or repeated exposure to conditions" applies to the allegations of the state complaints as to repeated acts of negligent supervision thereby allowing multiple acts of child molestation. Further, because the preposition "includes" is to be interpreted in its plain meaning as illustrative, but not exhaustive, the limiting phrase does not significantly impact the meaning of the term "accident".

The last part of the definition—"which results in bodily injury ... neither expected nor intended from the standpoint of the insured"—also supports a finding of a duty to defend. This language is applicable to the case here because the accident, the acts of negligent supervision and hiring, could be the legal and proximate cause of the injuries of the molested children. The insurer seizes upon the recent decision of the Florida Supreme Court in *Landis v. Allstate Insurance Co.*, 546 So.2d 1051 (Fla. 1989). The plaintiff USF & G contends that this case supports the following analysis:

The fact is that this carrier only provides coverage for persons injured in a[n] [sic] "occurence". In order for a covered "occur[]ence" [sic] to occur there must be an accident. An act of child molestation cannot be an accident. *See* USF & G's Response to Motion for Summary Judgment by Paradise, at 4 (unnumbered); *also see* USF & G's motion for summary judgment at 2 (unnumbered).

However, this case does not support the plaintiff's attenuated reasoning. First, the Florida Supreme Court was considering a homeowner's policy, not an explicit "public liability policy" covering a school explicitly. Furthermore, the *Landis* court, in pertinent part, interpreted an intentional tort *exclusionary* clause in an insurance policy. The *insured* was sued for his acts of child molestation. The issue was whether, under the contract language, a child molester can commit his misconduct without intending to injure the child. Indeed, the clause in the case at bar regarding a "bodily injury ... neither expected nor intended from the standpoint of the insured" is applicable to the *Landis* analysis. The supreme court merely held that an insured child molester intends, as a matter of law, to harm the child.

This holding is not at issue here. The state plaintiffs, taking their allegations as true, do not seek to recover from insured molesters. The allegations are that the named defendants allowed other parties to molest the children. USF & G attempts to introduce evidence that certain of the defendants including James Toward and Brenda Williams have been found guilty of criminal child molestation in state criminal proceedings. However, there has been no such finding in the state civil actions. Moreover, the key to this declaratory action, as noted above, is the allegations of the state complaints, and not the actual facts which may later be proven. Indeed, USF & G has not shown that the criminal findings are binding upon the civil plaintiffs.

Surely the insurer cannot dispute that the term "accident" includes direct acts of negligence such as unreasonable care in supervising and hiring the school's employees. An accident is an unexpected occurence not actually foreseen by the insured. There is no allegation in the state complaints that the defendants actually knew they were acting below the applicable standard of care. Moreover, even if the named state defendants were also involved in the acts of child molestation, it is not clear under the policy language that the molestors could not have also breached their duty of care in allowing others to molest. USF & G does have a policy exclusion for "personal injury ... arising out of the wilful violation of a penal statute or ordinance *committed by or with the knowledge or consent of the insured.*" *See* Section II(B)(2) (emphasis added). However, because the complaints do not allege facts sufficient to invoke this exclusion, the insurer cannot avoid its duty to defend under this provision. If the named defendants in the state action were molesting children but also negligently allowed others to molest the school's pupils, the exclusion would not apply and the acts of active negligence would constitute an "accident".

Even if the insurer's narrow definition of "occurrence" was accepted, this would not be dispositive. The term is a definition and is *not* found as an exclusionary clause in the contract as was the case in *Landis*. Further, the broad language of Section II's title and the breadth of the insurer's obligation under subsection (A) undermines USF & G's position.

Of course, under the court's determination of the duty to defend, the insurer is not obligated to provide a defense to allegations of intentional misconduct. Each of the state defendants is alleged to have been liable for negligence. Some defendants are also alleged to have committed battery against children. As to the following claims, USF & G has no duty to defend: Count IV of the Kaye complaint against Brenda Williams, and Counts IV and V of the Missimer complaint against Williams and Linda Cooke. Of course, amendments in the state civil cases could change the insurer's obligation if the intentional tort allegations are dropped and replaced with negligence claims.

■ The next issue is whether the state plaintiffs are "persons" under the policy. Section II(A) obligates USF & G to pay damages "sustained by *any* person ... *arising out of* the conduct of the named insured's business." (emphasis added). The children were allegedly sexually molested by various employees of the school while they were duly enrolled and in attendance. Certainly these allegations in the state complaint fall within the broad language of "arising out of".

■ The parties have also moved for summary judgment on the issue of whether the employees of the school who are named in the state action as defendants are "additional insured" parties under the policy. Part X states:

> As respects bodily injury, property damage and personal injury ... coverages, under the provision "Persons Insured", the following are added as insureds:

> .    .    .    .    .

> (B) Employee—Any employee (other than executive officers) of the named insured while acting within the scope of his duties as such ...

This provision also names three exclusions, but none are applicable here. The state complaints allege that the defendants were employed by the school and negligently allowed molestations to occur while they were working. Certainly, the state defendants are co-insureds under the policy.

■ The "Persons Insured" by USF & G are "James & Rosario Toward dba Glendale Montessori School". The Towards are obviously included under this section. The state plaintiffs also claim that the School is also an insured under the policy. USF & G has moved for a declaration on this issue. The state plaintiffs have filed a counterclaim seeking reformation of the policy to so denominate the school.

USF & G is correct that the counterclaim is not ripe for disposition under Rule 56. The counterplaintiffs have not presented any evidence for this court to find that there was either a mutual or unilateral mistake supporting reformation or that the parties intended to include the school as an insured. However, because USF & G has moved for judgment, the plaintiff's prayer for relief is ripe. The only issue in this case is whether the insurer has a duty to defend. Based on the policy which is in evidence as an exhibit to USF & G's complaint, it is clear that the parties intended to name the Glendale Montessori School as a "Person Insured". The insurer noted that the Towards were doing business as a school. Furthermore, the policy contains numerous references to school buildings, pupils, and the conduct of the Towards' business as a "parochial or private" school.

Alternatively, the insurer has conceded that the school is a named insured. In a dicovery response filed with the court by the state plaintiffs, USF & G has voluntarily agreed to amend its policy to add the school to the policy. USF & G objects to consideration of this amendment as inadmissible evidence of settlement negotiations. However, this is simply not the case. The concession was made in regards to a Request for Admission and the voluntary amendment was not conditioned upon any settlement concession by the opposing party. USF & G is estopped to deny that the school is an insured. It filed the present action seeking a declaration of this issue. By amending the policy, the insurer has indicated that this issue is no longer disputed.

As to the interpretation of "occurrence", "persons", and insureds under the policy, the court has also considered that the insurer drafted the complex provisions of the policy. In the cases of ambiguous language especially when dealing with the issue of an insurer's duty to defend, the terms are construed in favor of the insured and against the drafter.

■ Finally, USF & G contends that public policy bars recovery by the state plaintiffs in their civil case. The insurer's position is that "where the tortfeasor's underlying act itself is not covered under the policy, there is not coverage that can be stretched so as to cover a co-insured under the policy for alleged negligent supervision over the tortfeasors." *See* USF & G's Response to Linda Cooke's Motion for Sum-

mary Judgment at 2. Presumably, the same argument is meant to apply to the allegations of negligent hiring.

The insurer relies upon a line of cases involving automobile accidents. *See Dalrymple v. Ihnen Pool Service & Supply*, 498 So.2d 646 (Fla. 4th DCA 1986); *Cesarini v. American Druggist Insurance*, 463 So.2d 451 (Fla. 2nd DCA 1985); *Gargano v. Liberty Mutual Insurance Co.*, 384 So.2d 220 (Fla. 3rd DCA 1980). These authorities are irrelevant to the case at hand. They all involve interpretation of an exclusionary clause in policies disallowing coverage for the use of the vehicle. The plaintiffs suing the insureds alleged negligent supervision, hiring, retention or entrustment of the automobile. All three courts found that the exclusion applied. However, while these decisions could be read to support USF & G's position, all three cases involve interpretation of *contract* language. They are not based upon considerations of *public policy*. The fact that the courts allowed private litigants to contract to exclude coverage in this situation does not necessarily mean that a more limited exclusion would have violated any public policy. Even the *Landis* case is distinguishable on the same basis that the supreme court's holding is based on the intentional tort exclusion *under the contract*.

Indeed, to accept the insurer's position would require a holding that negligent supervision and hiring are not actionable in Florida. Of course, this is not the law. Moreover, the plaintiff offers no support for the notion that these causes of actions inherently violate public policy in the case where the defendant's negligent acts lead to the commission of intentional torts. As provided by the law of negligence, if it was foreseeable that a third party would commit an intentional wrong, then the plaintiff should be able to recover for the defendant's negligence in allowing the commission of that act.

In fact, the gist of negligent hiring and supervision is that the defendant acted unreasonably in letting another party to whom he had a duty to control commit a wrong against the plaintiff. It is irrelevant that the third party injures the plaintiff through a separate act of negligence or intentional conduct. The focus of these torts is the first wrong, the defendant's negligence, not the second wrong, the third-party's wrongful conduct which leads to the plaintiff's injury. In terms of the elements of negligent supervision, if the defendant did not adequately supervise the third party, he would be liable. However, if this negligent supervision did not result in the third party committing some wrong which injured the plaintiff, there would be no prima facie case because the plaintiff would not be able to show damages.

Also, as far as these parties are concerned, the insurer does not claim that it was not on notice of the existence of causes of action for negligent supervision and hiring. This was a risk that the insurer could have excluded when it was drafting the contract.

Apparently, the plaintiff is attempting to rely upon the public policy doctrine that forbids contractual indemnification for damages awarded for intentionally harmful misconduct. However, the state plaintiffs are seeking to recover for the negligence of the insureds under the policy, not their intentional acts.

In summary, because the wrong is the negligence and not the intentional conduct of a third party, there would be no public policy bar. This court's decision would be the same even if the state defendants also were molesters. If these defendants were also negligent in allowing other employees to molest, the plaintiffs should be able to recover.

Having considered the motion and the record, and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED as follows:

(1) The plaintiff's motion for summary judgment and the defendants' motions for summary judgment are both hereby GRANTED IN PART AND DENIED IN PART. As to the parties' rights under the insurance contract, there are no genuine issues of material fact outstanding and both parties are entitled to summary judgment as noted herein. The court declares

the parties rights and obligations under the insurance policy to be as follows:

(a) As the state complaints now stand, USF & G has a duty to defend under the insurance policy except as to the intentional claims against Williams and Cooke in the complaints of the Kayes and the Missimers.

(b) The negligent hiring and/or supervision of the state defendants were "occurences" under the policy to the extent the insurer has a duty to defend.

(c) The children injured by the molestations are "persons" under the policy.

(d) The Glendale Montessori School is a named insured under the policy.

(e) The state defendants are co-insured employees under the policy.

(f) The insurer has failed to prove that Florida public policy precludes recovery for negligent supervision and/or hiring when the plaintiff's injuries are incurred from the commission of an intentional tort by a third party.

(2) The counterclaim of the defendants seeking reformation of the contract to include the school as a named insured is not ripe for decision on the merits. However, given the above ruling on the parties' rights as to the identical issue, the counterclaim is hereby DISMISSED as moot.

(3) As previously ruled by this court, the plaintiff's request for a declaration of coverage under the policy is not ripe for decision.

(4) While the court has declared the insurer's duty to defend in the state actions, this court takes no position as to whether the insurer's interests are in conflict with the state defendants' interests. Indeed, USF & G may be required to obtain separate counsel for the insureds given their position in this suit that the defendants acted intentionally and consented to the child molestation allegedly committed by their fellow employees.

(5) This cause shall stand DISMISSED.

DONE AND ORDERED.