**Charles H. KEATING, Jr., an individual, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a corporation, Defendant.**

**Andrew LIGGET, an individual, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a corporation, Defendant.**

**And Related Counterclaims.**

**Nos. CV 89–5343 SVW, CV 89–6799 SVW.**

United States District Court, C.D. California.

Sept. 18, 1990.

John J. Quinn, Lawrence A. Cox, James I. Ham, Quinn, Kully & Morrow, Los Angeles, Cal., for plaintiffs Charles H. Keating, Jr., Charles H. Keating III and Robert M. Wurzelbacher, Jr.

Robert A. Zeavin, Donald W. McCormick, Susan Hoffman, Diane Doster Heidenreich, Buchalter, Nemer, Fields & Younger, Los Angeles, Cal., for defendant National Union Fire Ins. Co. of Pittsburgh.

Peter K. Rosen, Dennis A. Winston, Rosen & Winston, Los Angeles, Cal., for plaintiff Andrew Ligget.

## REVISED ORDER RE SUMMARY JUDGMENT [1]

WILSON, District Judge.

### INTRODUCTION

The plaintiffs-counterdefendants in these consolidated actions (hereinafter "Keating") are directors and/or officers of Lincoln Savings and Loan Association ("Lincoln") and/or American Continental Corporation ("ACC"). Each is currently named as a defendant in, among others, *Sarah B. Shields, et al. v. Charles H. Keating, Jr., et al.,* (Central District of California case number CV 89–2052 SVW) and *Yahr, et al. v. Lincoln Savings and Loan Association, et al.,* (Los Angeles County Superior Court case number NWC 51500). The plaintiffs in *Shields* and *Yahr* allege, *inter alia,* that the defendants therein perpetrated a

---

1. This order supercedes the court's previous Order Re Summary Judgment entered May 18, 1990.

scheme whereby corporate bonds of ACC were fraudulently sold to Lincoln customers. The fraud consisted of alleged misrepresentations that the bonds were backed by the full faith and credit of the United States Government, when, in fact, they were not.

Defendant-counterclaimant National Union Fire Insurance Company of Pittsburgh ("National Union") entered into a number of written contracts with ACC whereby National Union agreed to provide liability insurance for ACC. Policy GLA 9605142 provided primary liability insurance for the period from April 7, 1985 to April 7, 1988 and policy GLA 2496293 provided primary liability insurance from April 7, 1988 to April 7, 1989 ("the primary policies"). National Union also provided excess liability insurance during this period.

Keating has brought suit seeking, *inter alia*, a declaration that National Union is obligated to provide a defense in *Shields, Yahr,* and the other underlying actions. National Union has counterclaimed, requesting a contrary declaration. Both parties have moved for summary judgment. As the case depends on the construction of the insurance policies, it involves a pure question of law which is appropriately resolved in the context of a motion for summary judgment. *State Farm Fire & Casualty Co. v. Eddy,* 218 Cal.App.3d 958, 964–65, 267 Cal.Rptr. 379, 381 (1990).

## DISCUSSION

### I. WHO IS COVERED

■ The principal issue before the court is whether Keating's conduct as alleged in the underlying lawsuits is potentially within the coverage provisions of the primary policies. However, before the court can address that issue it must first determine whether Keating is an insured party under the primary policies. The "Definitions" provision of the primary policies states that the "insured" is "any person or organization qualifying as an insured in the 'Persons Insured' provision of the applicable insurance coverage." Declaration of Robert J. Hubbard, Jr. in Support of Plaintiffs' Motion For Summary Judgment Exhibit 1 at 000006 (hereinafter "Hubbard 1") and Exhibit 2 at 000066 (hereinafter "Hubbard 2"). The parties agree that the applicable insurance coverage is the Advertising Injury Liability Coverage provided for in the Broad Form Comprehensive General Liability Endorsement ("the Broad Form Endorsement"). However, the Advertising Injury Liability Coverage does not contain a "Persons Insured" provision. Hubbard 1 at 000015–000016 and Hubbard 2 at 000108–000109.

The parties differ as to what follows from the absence of such a provision. National Union argues that the appropriate provision is clause X of the Broad Form Endorsement which is entitled "Additional Persons Insured." This clause reads as follows:

X. ADDITIONAL PERSONS INSURED

As respects bodily injury, property damage and personal injury and advertising injury coverages, under the provision "Persons Insured", the following are added as insureds:

(A) ...

(B) Employee—Any employee (other than executive officers) of the insured while acting within the scope of his duties as such....

Hubbard 1 at 000016 and Hubbard 2 at 000109. National Union thus asserts that Keating—as an executive officer—is specifically excluded from coverage for advertising injury. Keating objects to this interpretation. Keating argues that the Broad Form Endorsement is a supplement to the Comprehensive General Liability Coverage ("CGL") and that the CGL's "Persons Insured" provision is the appropriate reference. The CGL's "Persons Insured" provision extends coverage to "any executive officer, director or stockholder [of the named insured] while acting within the scope of his duties as such." Hubbard 1 at 000023, ¶ II(c) and Hubbard 2 at 000111, ¶ II(c). Thus Keating concludes that the Advertising Injury Liability Coverage protects Keating to the extent that the individual officer, director, or stockholder was

acting within the scope of his corporate duties. The court agrees.

First, it is clear that the Broad Form Endorsement is a supplement to the CGL. In fact, directly under the heading Broad Form Comprehensive General Liability Endorsement is a box that contains the following statement: "This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following: COMPREHENSIVE GENERAL LIABILITY INSURANCE". Hubbard 1 at 000015 and Hubbard 2 at 000108. Second, the language relied upon by National Union is "Additional Persons" and "persons added" and must therefore relate to some initial persons. The court is required to give meaning to each and every term of the contract. *Producers Dairy Delivery Co. v. Sentry Insurance Co.*, 41 Cal.3d 903, 916–17, 718 P.2d 920, 928, 226 Cal.Rptr. 558, 566 (1986). Finally, the reasonableness of Keating's interpretation is evidenced by the fact that it is shared by the International Risk Management Institute ("IRMI"). In explaining the amendment to clause X of the standard Broad Form Comprehensive General Liability Endorsement which added the exclusion of executive officers (and is relied on by National Union), the IRMI stated that

> [t]he basic general liability policy provides coverage for executive officers and this amendment just clarifies that coverage is being extended to any employee other than executive officers since they are already covered under the basic contract.

Declaration of Michael D. Howald, Exhibit D. Accordingly, the court agrees with Keating that the language is sufficiently clear that the primary policies' Advertising Injury Liability Coverage does extend to the plaintiffs-counterdefendants.

## II. ADVERTISING INJURY

Having determined that Keating is covered under the Advertising Injury Liability Coverage, the court must now decide whether the conduct alleged in the underlying lawsuits constitutes "advertising injury" as defined by the primary policies.

The primary policies define "Advertising Injury" as

> injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan.

Hubbard 1 at 000015, ¶ II(D) and Hubbard 2 at 000108, ¶ II(D). Keating asserts that the conduct alleged in the underlying lawsuits constitutes "unfair competition." National Union disagrees.

■ The primary policies do not define unfair competition; accordingly, it is up to the court to ascertain the parties' mutual intent regarding that term at the time of contracting. *See* Cal.Civ.Code § 1636. If the language of the contract is clear and explicit, and does not involve an absurdity, that language shall govern the interpretation. Cal.Civ.Code § 1638. Further, "[w]ords used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Reserve Insurance Co. v. Pisciotta*, 30 Cal.3d 800, 807, 640 P.2d 764, 767–68, 180 Cal.Rptr. 628, 631–32 (1982).

■ Both parties' initial position is that the term unfair competition is clear and explicit. National Union argues that the term is clearly and explicitly limited to the common law tort of "palming off." Keating argues that it clearly and explicitly means unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising. The fact that the contracting parties disagree as to the meaning of a term does not render the term ambiguous. However, "[a] policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable." *Producers Dairy*, 41 Cal.3d at 912, 718 P.2d at 924, 226 Cal. Rptr. at 562 (citations omitted).

"Palming off" is a reasonable definition of unfair competition. It encompasses the

"competition" element of the term and is "the central tort in unfair competition at common law." *Prosser and Keeton On Torts* 1015 (W.P. Keeton ed., 5th ed. 1984). However, a broader definition of the term is also reasonable. As noted in the leading Torts treatise, "[u]nfair competition is now a generic name for a number of related torts involving improper interference with business prospects." *Id.* at 1013. Thus, the court finds that Keating's suggested definition, "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising," is also reasonable. This definition has been adopted by the California Legislature. Cal.Bus. & Prof.Code § 17200 (formerly Cal.Civ.Code § 3369(3)). Further, this definition conforms to various dictionary definitions.[2] Finally, another indication that Keating's definition is reasonable is that it, or one equally as broad, was adopted by National Union in at least one series of lawsuits, though those cases did not potentially involve advertising injury allegations comparable to those asserted by the bond purchasers in the lawsuits underlying the insurance dispute before this court.[3] Accordingly, the court finds that the term "unfair competition" is capable of a number of reasonable constructions and thus concludes that that term is ambiguous.[4]

Having found no plain meaning of the term unfair competition, Keating urges the court to construe the contract against National Union in accordance with the canon of contract interpretation that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. *See Pisciotta,* 30 Cal.3d at 807–08, 640 P.2d at 768, 180 Cal.Rptr. at 632. While conceding the propriety of this rule in general, National Union argues that strict construction against the insurer is not appropriate in this case. In support of its position, National Union relies on *Garcia v. Truck Ins. Exchange,* 36 Cal.3d 426, 682 P.2d 1100, 204 Cal.Rptr. 435 (1984) and *Fireman's Fund Insurance Co. v. Fibreboard Corp.,* 182 Cal.App.3d 462, 227 Cal.Rptr. 203 (1986).

*Garcia* concerned a contract of insurance between the defendant and the California Hospital Association ("CHA"). At issue was the meaning of the term "supervisory or instructional services." After concluding that the term was unambiguous and that the insurer's interpretation was correct, the court went on to state that, even if the term was uncertain, CHA would not be able to invoke the rule of strict construction against the insurer. *Garcia,* 36 Cal.3d at 438, 682 P.2d at 1106, 204 Cal.Rptr. at 441. The court based this statement on its findings that the terms of the policy had been "negotiated between the carrier and CHA, and the language in contention was the product of joint drafting" and that CHA had "enjoyed substantial bargaining power vis a vis the carrier." *Id.*

---

**2.** For example, Webster's Third New International Dictionary (Unabridged 1981) defines unfair competition as "business competition effected by an act that is deceptive and in effect a fraud on the public or that otherwise violates the legal or equitable rights of a competitor or the public...."

**3.** National Union concedes that it accepted the defense of an insured in suits alleging investment fraud and related claims on the part of officers and directors of Technical Equities Corporations. *See* April 11, 1990 Declaration of Susan Hoffman and April 10, 1990 Declaration of James I. Ham, Exhibits D, E, F and G. This broad definition was also adopted by National Union's "coverage counsel." *See* National Union's Amended and Supplemental Response to Plaintiffs' Document Request at 2 and April 10, 1990 Declaration of James I. Ham, Exhibit C at 49–50.

**4.** National Union cites *Ruder & Finn Inc. v. Seaboard Surety Co.,* 52 N.Y.2d 663, 439 N.Y. S.2d 858, 422 N.E.2d 518 (1981), for the proposition that the term "unfair competition" is not ambiguous. The New York court did reject the definition advanced by the insured therein, i.e. that "unfair competition" is equivalent to "commercial unfairness." However, the New York court was not interpreting the term "unfair competition" under California law, a jurisdiction whose legislature has defined and whose courts have interpreted that specific term to encompass almost any form of "commercial unfairness." To the extent that the New York court would have concluded that unfair competition is not ambiguous despite the expansive legislative definition and judicial interpretations, this court respectfully disagrees.

The *Fibreboard* case involved the interpretation of an exclusion clause in an insurance policy. Like *Garcia,* the *Fibreboard* court found that the clause at issue was clear and unambiguous, but nevertheless went on to state that the rule of strict construction against the insurer was not applicable under the circumstances of the case. *Fibreboard,* 182 Cal.App.3d at 468, 227 Cal.Rptr. at 206. The court concluded that since the insured proposed or drafted the language at issue, "the reasons for the general rule of construction—'to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy' [citations omitted]—were nonexistent." *Id.*

■ National Union contends that since ACC is knowledgeable regarding insurance matters, participated in the negotiation of the policy, and was represented by a sophisticated insurance broker, *Garcia* and *Fibreboard* prevent this court from strictly construing the contract against National Union. The court cannot agree. As a large corporation, ACC undoubtedly enjoyed significant bargaining power as did the insured in *Garcia.* However, unlike *Garcia,* the policy at issue here was not negotiated paragraph by paragraph and the policy was not the product of joint drafting. Similarly, *Fibreboard* cannot control this case because ACC neither drafted nor proposed the unfair competition term; the insurer-draftsman controlled the language of the policy. In fact, the Broad Form Endorsements contained in the primary policies are simply standard insurance industry forms. Thus, it is clear that any ambiguities in the language of the contract must be interpreted against National Union as it is "the party who caused the uncertainty to exist." Cal.Civ.Code § 1654. This cases presents

yet another illustration of the dangers of the present complex structuring of insurance policies. Unfortunately the insurance industry has become addicted to the practice of building into policies one condition or exception upon another in the shape of a linguistic Tower of Babel. We join other courts in decrying a trend which both plunges the insured into a state of uncertainty and burdens the judiciary with the task of resolving it. We reiterate our plea for clarity and simplicity in policies that fulfill so important a public service.

*Insurance Co. of North America v. Electronic Purification Co.,* 67 Cal.2d 679, 691, 433 P.2d 174, 182, 63 Cal.Rptr. 382, 390 (1967).[5]

■ As discussed above, the broad definition of unfair competition asserted by Keating, and adopted by the California legislature,[6] is unquestionably reasonable. Further, this construction protects the insured's reasonable expectation of coverage. If National Union defined unfair competition in the manner it now suggests, it could have and should have so stated in the policy. Based on the foregoing, the court concludes that the term "unfair competition", as used in the primary policies, means unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.[7]

5. The court notes that the insurance industry has, since 1986, generally accepted this plea with regard to the term unfair competition. Review of industry materials demonstrates that this provision was removed from the standard Broad Form Endorsement. *See* Keating's March 13 Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment Exhibit C (The National Underwriter Company *Fire Casualty & Surety Bulletins,* 1986 CGL–COVERAGE B at Ab–1—Ab–3) and Exhibit D (Robertson *ISO Commercial Liability Forms: A Side-by-Side Comparison* (4th ed. 1986) at 35).

6. "As used in this chapter, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal.Bus. & Prof.Code sec. 17200 (West 1987).

7. National Union argues that such a definition would provide coverage for intentional fraud, in violation of section 1668 of the California Civil Code. National Union has not provided any analysis or cited any cases in support of this proposition. Additionally, in *CNA Casualty of California v. Seaboard Surety Co.,* 176 Cal.

## III. BODILY INJURY

Keating also contends that National Union has a duty to defend Keating under the Bodily Injury Coverage based upon allegations in the *Yahr* complaint. National Union claims no such obligation and asserts two arguments in support of its position. First, National Union contends that the policy does not cover mental anguish within the definition of bodily injury. Second, National Union contends that even if the alleged injury is "bodily injury" as defined in the policy, there is still no coverage as that injury was not "caused by an occurrence" as required by the policy.

The primary policies state that National Union will pay on behalf of the insureds all sums which the insured is legally obligated to pay as damages for "bodily injury" which is "caused by an occurrence." Hubbard 1 at 000006 and Hubbard 2 at 000066. The policies define Bodily Injury as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." *Id.* The policies define an occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* As noted above, National Union contends that there has been no allegation of "bodily injury," and regardless, that the injury complained of was not caused by an "occurrence."

### A. Has "Bodily Injury" Been Alleged?

Until recently, no California court had squarely addressed the question of the whether and to what extent emotional distress allegations were within insurance coverage for bodily injury. However, the California Court of Appeal that did recently address the issue has subsequently granted

rehearing, and thus, at least for the moment, its opinion is of questionable value as precedent. *United Pacific Insurance Co. v. The McGuire Co.*, 222 Cal.App.3d 467, 271 Cal.Rptr. 710 (1990) (rehearing granted, Aug. 23, 1990). The *United Pacific* court analyzed previous California case law and concluded that in order for there to be coverage for emotional distress under a bodily injury provision identical to the one at issue here, the emotional distress must have "manifested itself in physical injuries." *Id.* at 474, 271 Cal.Rptr. at 714. While this limitation on coverage for emotional distress damages appears reasonable, dicta in previous cases implied that even pure emotional distress would constitute bodily injury. *See Abellon v. Hartford Insurance Co.*, 167 Cal.App.3d 21, 26–30, 212 Cal.Rptr. 852, 855–57 (1985) (finding damages for wife's emotional distress from loss of consortium due to husband's physical injuries a sufficiently independent bodily injury not subject to the "per person" limit of the insurance coverage for husband's accident); *Employers Casualty Insurance v. Foust*, 29 Cal. App.3d 382, 386–87, 105 Cal.Rptr. 505, 508 (1972) (" 'bodily injury' must logically also include physical injury directly resultant from emotional distress" as well as the emotional distress itself).

The *Abellon* court specifically noted that distinguishing between physical and emotional injuries is often difficult because there is no bright line separating them. 167 Cal.App.3d at 27–30, 212 Cal.Rptr. at 855–57. Rather, the question of whether an emotional injury is a bodily injury "is a question of fact. It involves a medical or psychological problem of proof rather than purely a question of law." *Id.* at 26–27, 212 Cal.Rptr. at 855. As the question before this court is whether there is any

App.3d 598, 222 Cal.Rptr. 276 (1986), the court rejected an argument that requiring a defense by the insurer in an action involving allegations of intentional and fraudulent conduct by the insured would violate the public policy against insurance coverage for willful torts. Rather, the court found that this public policy, reflected in California Civil Code section 1668 and California Insurance Code section 533, forbids only indemnification for fraudulent or willful acts

and that allowing a defense against allegations of such conduct does not offend that policy. *Id.* at 614 n. 8, 222 Cal.Rptr. at 285 n. 8 (citing *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 419 P.2d 168, 54 Cal.Rptr. 104 (1966)). Regardless, since the allegations against Keating assert both negligent and intentional conduct, and since such alleged misconduct is within the definition of "unfair competition," this argument is without merit.

potential liability covered under the bodily injury provisions of National Union policies, it would appear that allegations of emotional distress would be sufficient to trigger a defense under those provisions given the language of the *Abellon* court regarding the nature of such injuries. However, rather than ignore the apparent limitation of *United Pacific*, the court will analyze the allegations at issue here under the principles of both *Abellon* and *United Pacific.*[8]

■■ The court must look to the relevant allegations in the underlying action to determine if bodily injury has been alleged. Paragraph 128 of the *Yahr* complaint alleges as follows:

> As a direct and proximate result of the false and misleading statements and representations by the Officer and Director Defendants regarding the financial condition of ACC and the investment safety and security of the Debentures, as set forth above, and the plaintiffs' resulting loss of their investment in the debentures, plaintiffs have suffered humiliation, embarrassment, loss of sleep, anxiety, nervousness and severe mental anguish, emotional and physical distress, and impairment of health, all to their

damage in an amount to be proven at trial.

National Union argues that this paragraph alleges nothing more than "pure" emotional distress and, thus, that there is no coverage for bodily injury under the restrictive standard endorsed by *United Pacific.* However, paragraph 128 expressly alleges both "emotional and physical distress" and "impairment of health." It is precisely these types of physical manifestations of emotional distress that make it difficult to draw a bright line between physical and emotional injuries. *See Abellon,* 167 Cal. App.3d at 27–30, 212 Cal.Rptr. at 855–57. Further, the court finds that, even under the *United Pacific* test, the *Yahr* plaintiffs' allegations of physical distress and impairment of health constitute a "bodily injury" potentially covered under the primary policies.[9] *See also State Farm Fire & Casualty Co. v. Westchester Investment Co.,* 721 F.Supp. 1165, 1167 (C.D.Cal.1989) (physical manifestations of emotional distress sufficient to indicate bodily injury).

### B. Was There An Occurrence?

■ National Union contends that even if the allegations in *Yahr* constitute a bodily injury, coverage is nonetheless unavailable since the alleged injuries to the *Yahr* plaintiffs were not "caused by an occur-

---

**8.** Since the *United Pacific* court ruled against the appellant-insured who was claiming that emotional distress alone constituted bodily injury, the court is confident that the California Court of Appeal will not adopt an even more restrictive definition of bodily injury given the analysis of previous cases in its initial opinion. Additionally, given this court's finding, *infra,* that sufficient physical manifestations have been alleged in the *Yahr* complaint to constitute bodily injury under the primary policies, this court need not resolve the difficult issue presented in *United Pacific.*

**9.** National Union has introduced a letter from Insurance West, Inc., ACC's agent, to AIG Risk Management, Inc., National Union's broker, in an attempt to demonstrate that ACC did not believe that it was covered for emotional distress. In relevant part, the letter states as follows:

> Regarding the renewal of the above mentioned policy, we would like to know if there is a possibility of adding any of the following coverages.... * Extend the personal injury definition to include mental anguish, mental injury, shock, humiliation, and discrimination

> not contrary to law.... Please let us know if you would be willing to adding [sic] any of these additional coverages and, if so, what the additional premiums would be.

From this, National Union concludes ACC could not have believed that emotional distress was covered under "bodily injury," because if it did so believe, it would have had no reason to request this additional coverage. Although somewhat appealing, this theory is fatally flawed. The problem with National Union's position is that the letter speaks of adding coverage for *personal* injury, not *bodily* injury. Personal injury coverage is separate and distinct from bodily injury coverage. The letter is silent with regard to bodily injury. Finally, it is logical that ACC would seek to extend coverage for emotional distress resulting from *personal* injury (which covers offenses such as false arrest, invasion of privacy, and libel), even if it believed that the existing policy included coverage for emotional distress resulting from *bodily* injury. Accordingly, the letter does not affect the court's analysis.

rence." As noted above, "occurrence" in this context is synonymous with "accident." In its broadest sense, an "accident" is an unforeseen and unplanned event or circumstance. *Webster's Ninth New Collegiate Dictionary* 49 (1983); *see also St. Paul Fire & Marine Ins. Co. v. Superior Court*, 161 Cal.App.3d 1199, 1202, 208 Cal. Rptr. 5, 7 (1984) (using same dictionary to define "accidental" as "arising from extrinsic causes; occurring unexpectedly or by chance; or happening without intent or through carelessness").[10] National Union asserts that the alleged cause of the bodily injury was the misleading statements of the directors and officers and that statements are always intentional. From this National Union concludes that the bodily injury could not have been caused by an accident, and therefore, there can be no coverage.

As quoted above, paragraph 128 of the *Yahr* complaint alleges that the bodily injury was caused by "false and misleading statements and representations by the Officer and Director Defendants regarding the financial condition of ACC and the investment safety and security of the Debentures, as set forth above." Standing alone, this clause supports National Union's contention. However, this clause does not stand alone. Rather, paragraph 128 is part of the fifth cause of action for "Negligent Infliction of Emotional Distress." That claim also contains paragraph 125, which alleges, in part:

> the Officer and Director Defendants intentionally made, instructed to be made and/or acquiesced or *allowed to be made*, materially false and misleading statements, representations and omissions regarding the financial condition of ACC and Lincoln and the investment safety and security of the Debentures.... (emphasis added)

This allegation defines the origin of the "misleading statements and representations" alleged to cause injury in paragraph

128. Thus the bodily injury may have been caused by the directors and/or officers negligently allowing others to make false and misleading statements.[11] Such conduct would not be intentional on the part of the negligent directors and officers, who are the insureds. The sole remaining question is whether such negligent supervision, in allowing the statements to be made, would constitute an accident.

It is clear that an accident is not present when the *insured* performs a deliberate act. *See, e.g., Merced Mutual Insurance Co. v. Mendez*, 213 Cal.App.3d 41, 50, 261 Cal.Rptr. 273, 279 (1989). However, "an 'accident' exists when any aspect in the causal series of events leading to the injury or damages was unintended by the insured and a matter or fortuity." *Id.* *Merced Mutual* makes clear that the focus is on whether the event was an accident from the perspective of the insured. This analysis has been adopted elsewhere. *See State Farm Fire & Casualty Co. v. Westchester Investment Co.*, 721 F.Supp. at 1168; *U.S. Fidelity & Guaranty v. Toward*, 734 F.Supp. 465, 468 (S.D.Fla.1990). In *State Farm Fire & Casualty Co. v. Westchester Investment Co.*, the underlying lawsuits charged the insureds-property owners with race discrimination in renting apartments. The insurer argued that such intentional conduct was not an accident and therefore there could be no coverage. The court rejected this argument. In so doing, it stated that

> an examination of the [underlying] complaints reveal [sic] that there is possible liability against [the insureds] under a negligent supervision of the property managers. This type of recovery does not require intent and can therefore constitute an "accident" that is entitled to coverage.

721 F.Supp. at 1168. Similarly, in *U.S. Fidelity & Guaranty v. Toward*, the court rejected an argument essentially identical to that advocated by National Union and

---

10. Further, in its ordinary sense, an accident is generally an unfortunate event, which is the result of carelessness or ignorance. *Webster's Ninth* at 49.

11. This construction of the complaint is supported by the fact that these paragraphs are contained in a cause of action based on negligence, not intentional wrongdoing.

stated that an accident is "an unexpected occurrence not actually foreseen *by the insured.*" 734 F.Supp. at 468 (emphasis added). Further, the court specifically held that even if the insureds had personally engaged in the intentional wrongful conduct, if they had also negligently allowed others to engage in that same conduct, the negligence would still constitute an accident. *Id. See also Westfield Insurance Co. v. TWT, Inc.*, 723 F.Supp. 492, 495 (N.D.Cal.1989) ("Negligent supervision could constitute an "occurrence" under the policy language.").

■ The alleged "accident" in this case is the making of the false and misleading statements. If the allegation of negligence in *Yahr* is proven, then this event was an unexpected occurrence not actually intended or foreseen by the insureds. Even if the individual insureds personally made false statements, they might nonetheless be liable for negligently allowing others to make false statements as well. *See U.S. Fidelity & Guaranty v. Toward,* 734 F.Supp. at 468. Thus, this court concludes that the *Yahr* complaint includes allegations of bodily injury caused by an occurrence.

### CONCLUSION

Under California law, National Union's "duty to defend is much broader than the duty to indemnify. An insurer's duty to defend must be analyzed and determined on the basis of any *potential* liability arising from facts available to the insurer from the complaint or other sources available to it at the time of the tender of defense." *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 605, 222 Cal.Rptr. 276, 278–79 (1986). As the foregoing discussion indicates, the allegations of the underlying complaints create potential liability that is within the coverage provisions of the primary policies. Thus, the court concludes that under the primary policies, National Union is presently obligated to defend Keating against these claims.[12] Accordingly, Keating is entitled

to summary judgment on the First Claim for Relief in the First Amended Complaint so far as it pertains to the primary policies.

■ The court further finds that, pursuant to 28 U.S.C. § 1292(b), this order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal of this order may materially advance the ultimate termination of the litigation.

IT IS SO ORDERED.

---

12. All parties agree that coverage under the excess policies is not triggered unless and until the primary policies are either inapplicable or exhausted. Having found the primary policies applicable, the court need not rule upon the eventual applicability of the excess policies.