No. 92-180

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

FARMERS UNION MUTUAL INSURANCE,

    Plaintiff and Respondent,

-vs-

RON KIENENBERGER, PATTI KIENENBERGER,
JARET KIENENBERGER, AND J.L.

    Defendants and Appellants.

FILED

FEB 2 5 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Patrick F. Flaherty, Attorney at Law, Great Falls,
Montana (Kienenberger)
John E. Seidlitz, Jr., Attorney at Law, Great Falls,
Montana  (J.L.)

    For Respondent:

        William  J.  Gregoire,  Smith,  Walsh,  Clarke  &
Gregoire, Great Falls, Montana

Submitted on Briefs:  November 24, 1992

Decided:  February 25, 1993

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Eighth Judicial District, County of Cascade, State of Montana, the Honorable John M. McCarvel presiding. The Kienenbergers and J.L. appeal from an order granting the respondent, Farmers Union Mutual Insurance (Farmers Union) summary judgment on the basis that it owed no duty to defend or indemnify its insured, Ron Kienenberger, in the underlying action. We affirm.

The underlying action arose in January 1991, when Ron Kienenberger's son Jaret, age 13, raped J.L., age 28. In the ensuing criminal proceedings, Jaret pled guilty to sexual intercourse without consent. J.L. then sued Jaret's parents on a theory of negligent supervision. She alleged in her complaint that the Kienenbergers owed a duty to her and to others to provide appropriate supervision to their child, Jaret Kienenberger, and that they had negligently supervised his upbringing "to the point where it was reasonably foreseeable that he would be a danger to himself and to third parties." The District Court dismissed J.L.'s action in April, 1992, on the Kienenbergers' motion, and J.L. appealed. Her appeal has not been decided.

The case before the Court is a declaratory judgment action instituted in District Court in October 1991 by Farmers Union. Farmers Union sought an order that it owed no duty to its policy holder, Ron Kienenberger, even though it had retained counsel for the Kienenbergers in J.L.'s action. The District Court held that under Ron Kienenberger's Farm and Ranch Liability Policy, Farmers

2

Union was not obligated either to indemnify or to defend the Kienenbergers against J.L.'s claim for damages.

The dispositive issue on appeal is whether the District Court erred in finding that Kienenbergers' insurance policy precluded coverage because J.L.'s injuries were not caused by an "occurrence" as defined in the policy. Appellants also question whether the District Court erred in finding that coverage was precluded by a clause in the policy that expressly excluded injuries caused by sexual molestation. We do not decide this issue because we affirm the District Court on the first issue. Appellants also raise another issue: whether negligent supervision by Jaret Kienenberger's parents is an "occurrence" for which Farmers Union was obligated to provide coverage. The District Court did not address this issue and we will not decide it here.

The policy provided that Farmers Union would pay damages for bodily injury or property damage caused by an "occurrence," defined as "an accident . . . neither expected nor intended from the standpoint of the insured" (emphasis added). An intentional act cannot be an "occurrence" because it is not an accident and because it is intended or expected by the insured. Therefore, injuries caused by an insured person's intentional act are not covered. New Hampshire Insurance Group v. Strecker (1990), 244 Mont. 478, 481, 798 P.2d 130, 132.

It is undisputed that as a member of Ron Kienenberger's household Jaret was an insured, and that Jaret's sexual assault of J.L. was intentional. Summary judgment is proper when the record

3

discloses no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; also see Truck Insurance Exchange v. Waller (Mont. 1992), 828 P.2d 1384, 1386, 49 St.Rep. 318, 319. Since it is undisputed that J.L.'s injuries were caused by an insured person's intentional act, and the insurance contract clearly and unambiguously excludes coverage for intentional torts, Farmers Union is entitled to summary judgment as a matter of law.

AFFIRMED.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

4

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with the result of the majority opinion because I conclude that Jaret's conduct constituted sexual molestation and that damages for such conduct were specifically excluded by the terms of the policy.

I dissent from the majority's conclusion that J. L.'s injuries were not an occurrence within the meaning of the policy.

J. L.'s claim against the parents is not based upon intentional conduct by the parents. It is based upon their alleged negligent failure to supervise their son, Jaret. Therefore, the authority relied upon by the majority is not on point and should not control the disposition of this case.

In *New Hampshire Insurance Group v. Strecker* (1990), 244 Mont. 478, 798 P.2d 130, the insured sought coverage for his own sexual assault and molestation of his daughter. We held that under those circumstances his conduct was not an "occurrence" within the meaning of the policy because it was not an accident and because the consequences of his conduct were intended.

In this case, even though the Kienenbergers are accused of negligently failing to supervise their son, there is no allegation, nor is it reasonable to conclude that by their negligent conduct they ever intended that their son would sexually assault J. L. or any other person. The circumstances in this case are much more similar to, and therefore, controlled by our decision in *Lindsay*

5

*Drilling and Contracting v. United States Fidelity and Guaranty Company* (1984), 208 Mont. 91, 676 P.2d 203. In that case, the plaintiff claimed that among other things, Lindsay negligently allowed its employees to interfere with samples taken from drilled test holes at the site of mining claims. USF&G insured Lindsay, and like the insurer in this case, sought a declaratory judgment to the effect that the conduct of its insured which was complained of did not fall within the risks covered by its policy of insurance. In that case, USF&G relied on the same definition of "occurrence" that is found in the policy that we construe in this case and contended that since intentional conduct was the basis for the plaintiff's complaint, there was no occurrence within the meaning of the policy. We disagreed and held as follows:

> A covered occurrence, as defined in the policy, is one whose consequences were neither expected nor intended by the insured. In *Northwestern National Casualty Co. v. Phalen* (1979), 182 Mont. 448, 597 P.2d 720, we held that an insurance policy with the same definition of "occurrence" covered an intentional act whose consequences were neither expected nor intended. Here, the counterclaim alleges in part that Lindsay negligently allowed bystanders to tamper with the core samples. This scenario does not include intended or expected consequences. Therefore, the counterclaim sets forth a covered "occurrence" as defined in the policy, if bodily injury or property damage resulted. [Emphasis added.]

*Lindsay*, 676 P.2d at 205.

Likewise, in this case, J. L.'s claim accuses Ron and Patti Kienenberger of negligent conduct which assumes that the consequences complained of were never intended nor expected by those insureds. She does not allege on appeal that the

Kienenbergers' son, Jaret, is a covered insured based on his intentional conduct.

The distinction that the majority is unable to make was made clearly by the U.S. District Court for the Southern District of Florida in *United States Fidelity and Guaranty Company v. Toward* (S.D. Fla 1990), 734 F. Supp. 465. In that case, James and Rosario Toward operated a school and were insured in that business by USF&G. The parents of some students alleged that certain teachers at the school had molested their children while they were pupils at the school. They filed lawsuits alleging molestation. They named the Towards as defendants, and alleged that they had negligently hired and then negligently supervised employees at their school.

A complaint for declaratory judgment was filed by USF&G to the effect that it had no duty to defend the Towards, based upon the same definition of "occurrence" that exists in this policy and that was found in the *Lindsay* policy. The district court disagreed and held that:

> The last part of the definition--"which results in bodily injury . . . neither expected nor intended from the standpoint of the insured"--also supports a finding of a duty to defend. This language is applicable to the case here because the accident, the acts of negligent supervision in hiring, could be the legal and proximate cause of the injuries of the molested children.

*Toward*, 734 F. Supp. at 467.

In the *Toward* case, the insurer also sought to rely on prior case law similar to the *Strecker* decision relied upon by the majority in this case. In *Landis v. Allstate Insurance Company* (Fla. 1989), 546

7

So. 2d 1051, coverage was excluded for an act of child molestation. However, the Federal District Court for Florida distinguished *Landis* for the following reasons:

> However, this case (Landis) does not support the plaintiff's (USF&G) attenuated reasoning. First, the Florida Supreme Court was considering a homeowner's policy, not an explicit "public liability policy" covering a school explicitly. Furthermore, the *Landis* court, in pertinent part, interpreted an intentional tort *exclusionary* clause in an insurance policy. The *insured* was sued for <u>his</u> acts of child molestation. The issue was whether, under the contract language, a child molester can commit his misconduct without intending to injure the child. Indeed, the clause in the case at bar regarding a "bodily injury . . . neither expected nor intended from the standpoint of the insured" is applicable to the *Landis* analysis. The supreme court merely held that an insured child molester intends, as a matter of law, to harm the child.
>
> This holding is not at issue here. The state [sic] plaintiffs, taking their allegations as true, do not seek to recover from insured molesters. The allegations are that the named defendants allowed other parties to molest the children. [Underlining emphasis added.]

*Toward*, 734 F. Supp. at 468.

Likewise, plaintiff in the underlying tort action in this case does not seek to recover from the parents for their intentional conduct. The basis of her effort to recover against them is that they negligently allowed their son to commit a violent offense against plaintiff. These facts are clearly distinguishable from the facts in the *Strecker* decision. These facts are controlled by our decision in *Lindsay*.

I would reverse the District Court's conclusion that Farmers had no duty to defend nor indemnify its insureds, Ron and Patti

8

Kienenberger, based upon the definition of "occurrence" within their insurance policy.

I do conclude, however, that coverage was excluded under the terms of Farmers' policy based on the "sexual molestation" clause which excluded coverage for bodily injury arising out of sexual molestation. Although there are no decisions in Montana which specifically define sexual molestation, and even though it is not defined within the terms of the policy, it is clear from the use of that language what kinds of injury were intended to be excluded. Molest means to annoy, disturb, or persecute, especially with hostile intent or injurious effect. It is often defined as an annoying sexual advance. Webster's New Collegiate Dictionary 764 (1984).

Therefore, I conclude that the damages sustained by J. L. as a result of Jaret's conduct were excluded from coverage in Farmers' policy with the Kienenbergers.

For these reasons, I concur with the result of the majority opinion, although I disagree with its rationale.

_____
Justice

Justice William E. Hunt, Sr., concurs in the foregoing concurrence and dissent of Justice Trieweiler.

_____
Justice

9

February 25, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


John E. Seidlitz, Jr.
Attorney at Law
P.O. Box 1581
Great Falls, MT 59403-1581


Patrick F. Flaherty
Attorney at Law
625 Central Ave. W., #101
Great Falls, MT 59404


William J. Gregoire
Smith, Walsh, Clarke & Gregoire
P.O. Box 2227
Great Falls, MT 59403-2227


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy