JUSTICE TRIEWEILER
concurring in part and dissenting in part.
I concur with the result of the majority opinion because I conclude that Jaret’s conduct constituted sexual molestation and that damages for such conduct were specifically excluded by the terms of the policy.
I dissent from the majority’s conclusion that J.L.’s injuries were not an occurrence within the meaning of the policy.
J.L.’s claim against the parents is not based upon intentional conduct by the parents. It is based upon their alleged negligent failure to supervise their son, Jaret. Therefore, the authority relied upon by the majority is not on point and should not control the disposition of this case.
*110 In New Hampshire Insurance Group v. Strecker (1990), 244 Mont. 478, 798 P.2d 130, the insured sought coverage for his own sexual assault and molestation of his daughter. We held that under those circumstances his conduct was not an “occurrence” within the meaning of the policy because it was not an accident and because the consequences of his conduct were intended.
In this case, even though the Kienenbergers are accused of negligently failing to supervise their son, there is no allegation, nor is it reasonable to conclude that by their negligent conduct they ever intended that their son would sexually assault J.L. or any other person. The circumstances in this case are much more similar to, and therefore, controlled by our decision in Lindsay Drilling and Contracting v. United States Fidelity and Guaranty Company (1984), 208 Mont. 91, 676 P.2d 203. In that case, the plaintiff claimed that among other things, Lindsay negligently allowed its employees to interfere with samples taken from drilled test holes at the site of mining claims. USF&G insured Lindsay, and like the insurer in this case, sought a declaratory judgment to the effect that the conduct of its insured which was complained of did not fall within the risks covered by its policy of insurance. In that case, USF&G relied on the same definition of “occurrence” that is found in the policy that we construe in this case and contended that since intentional conduct was the basis for the plaintiff’s complaint, there was no occurrence within the meaning of the policy. We disagreed and held as follows:
A covered occurrence, as defined in the policy, is one whose consequences were neither expected nor intended by the insured. In Northwestern National Casualty Co. v. Phalen (1979), 182 Mont. 448, 597 P.2d 720, we held that an insurance policy with the same definition of “occurrence” covered an intentional act whose consequences were neither expected nor intended. Here, the counterclaim alleges in part that Lindsay negligently allowed bystanders to tamper with the core samples. This scenario does not include intended or expected consequences. Therefore, the counterclaim sets forth a covered “occurrence” as defined in the policy, if bodily injury or property damage resulted. [Emphasis added.]
Lindsay, 676 P.2d at 205.
Likewise, in this case, J.L.’s claim accuses Ron and Patti Kienenberger of negligent conduct which assumes that the consequences complained of were never intended nor expected by those insureds. *111 She does not allege on appeal that the Kienenbergers’ son, Jaret, is a covered insured based on his intentional conduct.
The distinction that the majority is unable to make was made clearly by the U.S. District Court for the Southern District of Florida in United States Fidelity and Guaranty Company v. Toward (S.D. Fla 1990), 734 F. Supp. 465. In that case, James and Rosario Toward operated a school and were insured in that business by USF&G. The parents of some students alleged that certain teachers at the school had molested their children while they were pupils at the school. They filed lawsuits alleging molestation. They named the Towards as defendants, and alleged that they had negligently hired and then negligently supervised employees at their school.
A complaint for declaratory judgment was filed by USF&G to the effect that it had no duty to defend the Towards, based upon the same definition of “occurrence” that exists in this policy and that was found in the Lindsay policy. The district court disagreed and held that:
The last part of the definition — “which results in bodily injury... neither expected nor intended from the standpoint of the insured” — also supports a finding of a duty to defend. This language is applicable to the case here because the accident, the acts of negligent supervision in hiring, could be the legal and proximate cause of the injuries of the molested children.
Toward, 734 F. Supp. at 467.
In the Toward case, the insurer also sought to rely on prior case law similar to the Strecker decision relied upon by the majority in this case. In Landis v. Allstate Insurance Company (Fla. 1989), 546 So. 2d 1051, coverage was excluded for an act of child molestation. However, the Federal District Court for Florida distinguished Landis for the following reasons:
However, this case (Landis) does not support the plaintiff’s (USF&G) attenuated reasoning. First, the Florida Supreme Court was considering a homeowner’s policy, not an explicit “public liability policy” covering a school explicitly. Furthermore, the Landis court, in pertinent part, interpreted an intentional tort exclusionary clause in an insurance policy. The insured was sued for his acts of child molestation. The issue was whether, under the contract language, a child molester can commit his misconduct without intending to injure the child. Indeed, the clause in the case at bar regarding a “bodily injury... neither expected nor intended from the standpoint of the insured” is applicable to the Landis *112 analysis. The supreme court merely held that an insured child molester intends, as a matter of law, to harm the child.
This holding is not at issue here. The state [sic] plaintiffs, taking their allegations as true, do not seek to recover from insured molesters. The allegations are that the named defendants allowed other parties to molest the children. [Underlining emphasis added.]
Toward, 734 F. Supp. at 468.
Likewise, plaintiff in the underlying tort action in this case does not seek to recover from the parents for their intentional conduct. The basis of her effort to recover against them is that they negligently allowed their son to commit a violent offense against plaintiff. These facts are clearly distinguishable from the facts in the Strecker decision. These facts are controlled by our decision in Lindsay.
I would reverse the District Court’s conclusion that Farmers had no duty to defend nor indemnify its insureds, Ron and Patti Kienenberger, based upon the definition of “occurrence” within their insurance policy.
I do conclude, however, that coverage was excluded under the terms of Farmers’ policy based on the “sexual molestation” clause which excluded coverage for bodily injury arising out of sexual molestation. Although there are no decisions in Montana which specifically define sexual molestation, and even though it is not defined within the terms of the policy, it is clear from the use of that language what kinds of injury were intended to be excluded. Molest means to annoy, disturb, or persecute, especially with hostile intent or injurious effect. It is often defined as an annoying sexual advance. Webster’s New Collegiate Dictionary 764 (1984).
Therefore, I conclude that the damages sustained by J.L. as a result of Jaret’s conduct were excluded from coverage in Farmers’ policy with the Kienenbergers.
For these reasons, I concur with the result of the majority opinion, although I disagree with its rationale.
JUSTICE HUNT concurs in the foregoing concurrence and dissent of JUSTICE TRIEWEILER.