218 N.J. Super. 492 (1987)
528 A.2d 64
LUMBERMEN'S MUTUAL CASUALTY CO., AND ARI KIEV, M.D., PLAINTIFF-APPELLANT,
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 29, 1987.
Decided July 1, 1987.
*494 Before Judges KING, DEIGHAN and HAVEY.
Garrigle, Chierici, Palm & Wright, for appellant (William A. Garrigle and Anne Tucker Shulman, on the brief).
Archer & Greiner, for respondent (Betty S. Adler, on the brief).
The opinion of the court was delivered by KING, P.J.A.D
The issue here is whether a libel claim qualifies as "bodily injury" and creates a duty to defend under the comprehensive general liability coverage of a homeowner's insurance policy. We agree with Judge Hyland of the Law Division that it does not and affirm. A cause of action for defamation does not, without more, allege physical or emotional injury to the person defamed within the meaning of the standard homeowner's policy.
This is the factual background leading to this claim. Dr. Ari Kiev is a practicing psychiatrist with his office and related teaching responsibilities in New York City. He had a professional and personal interest in sports medicine; this generated his interest in the health club industry. He eventually met Kenneth Dion who was involved with health clubs and programs known as Club Nautilus. Together with other professionals who were his friends, Dr. Kiev established several Club Nautilus centers. The investors set up individual corporations for each operation, and Dr. Kiev was made president of each. In light of his active psychiatric practice, he was unable to participate in the daily management of the clubs so a management contract was executed with a company, Total Management, operated by Dion. Not only was an initial investment made, but Dr. Kiev advanced other monies and also personally guaranteed certain obligations of the business. He also solicited customers and additional investors while the corporations were still viable. He wanted to emphasize the sports medicine aspect of the club and attempted to steer the marketing and advertising in that direction. However, he was unable to *495 convince Dion to change the advertising theme which generally focused on Dion's stunning wife.
The clubs were eventually unsuccessful and closed. Dr. Kiev suffered a loss of about $160,000. At about that time, a reporter from the Philadelphia Inquirer called Dr. Kiev for his comments in regard to Dion and the closing of the businesses. During this interview Dr. Kiev made the allegedly defamatory statements pertaining to Dion, which were the basis of an action instituted in the federal court in Pennsylvania in 1983 against Kiev. That action eventually was settled for $45,000 by plaintiff Lumbermen's Mutual Casualty Company, Dr. Kiev's personal liability insurance carrier.
The allegedly defamatory article was an account of the financial difficulties of Club Nautilus. The reporter attributed Club Nautilus' collapse to "the unwieldiness of the club's 35 checking accounts, the differing opinions of 47 investors and Dion's ambitious dreams." The reporter also said that Dion was "an artful promoter who nonetheless lacked the management skills to make the clubs financially successful." The article drew support from quotations from several investors. It quoted Kiev as follows: "He was running it like a big business like a Jack LaLanne, but he didn't have the assets of a Jack LaLanne.... I think he is just incompetent." Another investor, Leo Goldner, was quoted as saying that the clubs "were totally mismanaged." Both Goldner's and Kiev's quotes were cited as the basis for Dion's federal court defamation action.
Upon the filing of the January 1983 defamation suit in the United States District Court in Philadelphia against Kiev and Goldner, in which Dion alleged defamation in comments made to the reporter for the Philadelphia Inquirer, which were published in the story of October 31, 1982, Kiev asked each of his liability insurance carriers to defend him: United Services Automobile Association (USAA), pursuant to a homeowner's policy, and Lumbermen's Mutual Casualty Co., pursuant to a personal liability policy. USAA disclaimed; Lumbermen's agreed to *496 defend, and settled for the $45,000 which it paid to plaintiff in the federal action.
Lumbermen's then brought this action in the Law Division seeking a declaration that USAA indeed had owed Kiev a duty to defend the federal suit and for a judgment compelling USAA to indemnify Lumbermen's for the $45,000 settlement payment on Kiev's behalf, and for its litigation expenses. In its answer USAA asserted that no coverage was provided under the terms of its homeowners insurance policy.
After trial at which Kiev was the sole witness Judge Hyland issued a written opinion in favor of USAA. He ruled that (1) the policy's coverage for "bodily injury" did not include a defamation action; and, in the alternative, (2) coverage was excluded by the policy's exclusion for claims arising out of the insured's "business pursuits."
Lumbermen's contends that the judge erred in finding that the "bodily injury" clause of the USAA homeowner's policy did not cover the defamation action against Kiev. Lumbermen's refers to paragraph 20 of the federal court complaint in which Dion alleged that "Kiev's statements severely damaged plaintiff's reputation, impaired his effectiveness to work in his current businesses, diminished his ability to promote new businesses, and caused him embarrassment, humiliation, anguish and distress." Because the dictionary defines "anguish" and "distress" to include bodily as well as mental effects, Lumbermen's argues that the complaint alleged "bodily injury" and triggered USAA's duty to defend.
In the section of the policy labelled "Liability Coverages," USAA agreed that
If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:
a. pay up to our limit of liability for the damages for which the insured is legally liable; and
b. provide a defense at our expense by counsel of our choice. We may make an investigation and settle any claim or suit that we decide is appropriate. *497 Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.
In the definitional section, "bodily injury" was defined as "bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom."
Judge Hyland found that defamation was not "bodily injury" within the meaning of this policy, saying
A defamation action such as that instituted by Mr. Dion does not represent a claim or suit for damages under either of the above terms [bodily injury or property damage] as defined by the policy. To argue that an action for defamation would be covered stretches the language quoted to the limit and constitutes an unreasonable interpretation.
We agree.
The duty to defend is determined by comparing the allegations of the complaint with the coverage provisions of the policy: the duty exists only if the complaint states a theory of recovery for which coverage is provided by the policy; there is no duty as to counts not covered. Hartford Acc. & Indemn. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 21-23 (1984); Burd v. Sussex Mutual Insurance Co., 56 N.J. 383, 388-389 (1970). The duty to defend is measured without regard to the ultimate merits of the cause of action: if the complaint alleges facts which, if proved, would constitute a covered risk, the insurer must defend even though if its insured wins at trial, the insurer will have no duty to pay. Hence, it is said that the duty to defend is independent of or broader than the duty to pay. Danek v. Hommer, 28 N.J. Super. 68, 79 (App.Div. 1953), aff'd o.b. 15 N.J. 573 (1954).
Thus the issue is whether a defamation action against Kiev was the kind of risk of "bodily injury" covered by USAA. We are surprised at the dearth of authority disclosed by our research on this point. The only case on point is from Louisiana: Aker v. Sabatier, 200 So.2d 94 (La. Ct. App. 1967), cert. den. 202 So.2d 658, 251 La. 49 (1967). There a chiropractor sued a medical doctor for defamation. Also named as a defendant was the doctor's homeowner's insurance carrier, whose policy purported to indemnify the doctor for damages due to "bodily *498 injury." No express mention was made of defamation in the policy. The carrier prevailed on summary judgment, and the doctor appealed, arguing that the allegation in the complaint that the alleged defamatory remarks caused "a painful memory" constituted an allegation of "bodily injury." The Louisiana Court of Appeals disagreed.
... [I]n this case, there are no allegations that any physical or bodily injury resulted from the alleged libel and slander. That being the case, there can be no recovery under the policy because of a "painful memory," which is clearly mental and note physical in nature. [200 So. at 96].
The only other factually similar case worth noting is Employers Mut. Liability Ins. Co. of Wis. v. Hendrix, 199 F.2d 53, 59 (5 Cir.1952), in which the Fifth Circuit commented in dictum that a claim for slander did not involve "bodily injury" and was not within the coverage of the policy.
Unlike a claim for physical or mental injury, defamation "is not concerned with the plaintiff's own humiliation, wrath or sorrow, except as an element of `parasitic' damages attached to an independent cause of action." Prosser & Keeton, Law of Torts (5 ed. 1984), § 111 at 771. And: "The mere fact that the plaintiff's feelings and sensibilities have been offended is not enough to create a cause of action for defamation." 2 Harper & James & Gray, Law of Torts (2 ed 1986), § 5.1 at 94. Rather, defamation is an impairment of a "relational" interest, i.e., it denigrates the opinion which others in the community have of plaintiff, and it invades plaintiff's interest in his reputation and good name. Ibid. Thus the damages sustained by a defamed plaintiff are not to his personal feelings, but rather to those losses which accompany an interference with one's social, business, religious or familial relations. Prosser & Keeton, supra, § 116A at 843.
Clauses insuring against "bodily injury" are understood in the industry, according to one set of commentators, to refer to physical and mental damage to the person. Riegel, Miller, & William, Insurance Principles and Practices, Property and Liability (6 ed. 1976) at 430. According to these writers, the *499 term does not include "personal injuries," such as "false arrest, libel or slander, and wrongful entry or eviction," which "may be added by endorsement." Ibid. Thus "personal injury" coverage is not the same as "bodily injury" coverage in insurance terms. 7A Appleman, Insurance Law and Practice (Berdal ed. 1979), § 4501.14 at 186. It is "broader and more comprehensive than the term `bodily injury'," which is limited to impact to the body. See also Nuzzi v. United States Casualty Co., 121 N.J.L. 249, 254 (E. & A. 1938).
Given this distinction drawn in the industry, the inclusion in USAA's policy of a "bodily injury" clause instead of a "personal injury" clause was significant. Arguably, had USAA intended to cover defamation actions, it would have included the kind of "personal injury" clause which Lumbermen's did include in its policy. The Lumbermen's contract expressly defined "personal injury" to include physical and mental harm, as well as such additional intrusions upon the individual as false arrest, wrongful eviction, malicious prosecution, humiliation, and "libel, slander, defamation of character or invasion of privacy."
In its reply brief Lumbermen's cites a recent opinion of Judge Baime which, plaintiff claims, supports its position that the defamation claim qualifies under the "bodily injury" clause. NPS Corp. v. Insurance Co. of North America, 213 N.J. Super. 547 (App.Div. 1986). The issue there was whether the insurer's duty to defend under a "bodily injury" clause was "triggered by a complaint alleging acts of sexual harassment by the insured's employee resulting in the complainant's emotional distress and mental anguish." Id. at 548. The sexual harassment was an assault and battery consisting of offensive touching of the insured's employee's "buttocks and breasts." Reversing the trial judge, which had held that "bodily injury" contemplated physical harm only, Judge Baime held that the term also "includes the emotional and psychological sequelae *500 allegedly resulting from the unauthorized invasion of the complainant's person." Id. at 550.
The judge reasoned that the phrase "bodily injury" was ambiguous in this context, thereby warranting application of the principle that doubts must be construed in favor of the insured. Id. at 551. He surveyed case law holding that emotional stress is as real as physical pain, id. at 552, and concluded
... [W]e disagree with INA's argument that bodily injury necessarily entails some physical or corporeal harm caused by the application of external violence. We are unable to separate a person's nerves and tensions from his body. Clearly, emotional trauma can be as disabling to the body as a visible physical wound. Moreover, it is common knowledge that emotional distress can and often does have a direct effect on other bodily functions. [Id. at 553].
He found it significant that the policy did not, as it might have, expressly limit "bodily injury" to physical harm.
We find NPS is factually distinguishable from this defamation case. In NPS there was a physical assault which had harmful emotional consequences. Judge Baime was "unable to separate a persons' nerves and tensions from his body," id. at 553, and thus held that an assault and battery which caused emotional distress qualified as "bodily injury." Id. at 554. Thus the basis of his decision was that there was injury to the person, defined broadly as both her body and her emotions. In the case before us, in contrast, the alleged defamation was not an assault on Dion's body which had emotional consequences. Rather, Dion's reputation was allegedly impaired, which in turn caused him "embarrassment, humiliation, anguish and distress." Plaintiff's reliance on the dictionary definitions of "anguish" and "distress" is unconvincing. In the context of the complaint as a whole, Dion was clearly alleging common-law defamation, nothing more.
Because of our conclusion on this point, we need not reach the coverage questions presented involving the "intentional act" exclusion and the "business pursuits" exclusion.
Affirmed.