[No. H006828. Sixth Dist. Apr. 10, 1991.]

AIM INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v.
JAMES CULCASI, Defendant, Cross-complainant and Appellant.

212

**COUNSEL**

George S. Roberts for Defendant, Cross-complainant and Appellant.

Low, Ball & Lynch, Raymond Coates and Geneva Wong Ebisu for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**CAPACCIOLI, Acting P. J.—**

*Statement of the Case*

Defendant James Culcasi (Culcasi), doing business as Rosine's, a restaurant, appeals from a judgment entered after the trial court granted plaintiff Aim Insurance Company's (Aim) motion for summary judgment. He claims the court erred in granting the motion. We affirm the judgment.

*Scope of Review*

■ The trial court may properly grant a motion for summary judgment only if there are no triable issues of fact and, as a matter of law, the moving party is entitled to judgment. (*Blankenheim* v. *E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1470 [266 Cal.Rptr. 593].)

*The Undisputed Facts*

In October 1986, Culcasi hired Noemi Grijalva as a waitress at Rosine's. At that time, Culcasi made health insurance available to his employees. Around July 24, 1986, Grijalva submitted an application for insurance coverage to Culcasi, who accepted it and undertook to forward it to the insurer. ■ ■ ■ ■ According to Culcasi, the application "was entrusted by her to [me] for the purpose of transmitting the same to the group health insurance company and plan administrator."[1]

In January 1989, Grijalva sued Culcasi and others, for negligent breach of fiduciary duty, breach of contract, and infliction of emotional distress. In her complaint, she alleged that eligibility for insurance was part of the compensation Culcasi paid his employees, and this potential eligibility induced Grijalva to apply for and accept the job at Rosine's.

She alleged that on July 24, 1987, she filled out an application and gave it to Culcasi. He, in turn, represented that she would be properly enrolled in the health insurance program and undertook the obligation "to insure that her application and documents were promptly and properly forwarded to the health plan and that her premium payment would result in the expected coverage."

Grijalva alleged that she met all the requirements for enrollment in the plan, premiums were deducted from her paycheck, she believed she was so enrolled in the plan, and, as a result, she did not attempt to purchase other health insurance. However, according to Grijalva, Culcasi negligently failed "to properly complete her enrollment in the plan despite his assurances that she was so enrolled." Thereafter, he requested and obtained another application, which he told her to backdate to July 24, 1987.

On September 6, 1987, Grijalva was injured in an automobile accident. In late September 1987, the insurer received her second application and

---

[1] This statement is taken from the allegations in Culcasi's cross-complaint against Aim and, therefore, constitutes an admission. (1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule, § 646, pp. 631-632.)

enrolled her in the health plan as of *October 1, 1987.* However, this enrollment date precluded recovery for the injuries she suffered in early September. Thus, she alleged that Culcasi's conduct deprived her of insurance coverage and as a result she had to pay her own medical expenses and suffered great emotional distress.

Culcasi tendered his defense action to Aim, which had issued a liability insurance policy (the Policy) to him. Under it, Aim agreed to "pay on behalf of [Culcasi] all sums which [he] shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies" and to "defend any suit against [Culcasi] seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent[.]"

Aim assumed the defense under a reservations of rights. On April 4, 1989, it filed the instant action, seeking a declaration that it had no potential duty to indemnify Culcasi in the event Grijalva prevailed and no duty to provide his defense. Culcasi answered and filed a cross-complaint seeking a declaration that Aim had a duty to defend and, if necessary, indemnify him.

Thereafter, Aim filed a motion for summary judgment. After a hearing, the trial court granted the motion and entered judgment in favor of Aim. In a minute order, the court explained that any duties Culcasi might have had regarding the handling of Grijalva's medical plan application could only be based on their employment contract, and, therefore, Culcasi would be liable for damages only if he breached this contract. However, the court found that the Policy covered only tort, not contractual, liability. Consequently, Aim had no duty to defend against Grijalva's contract action.

### Discussion

### The Trial Court's Rationale

■ The Policy provided indemnification for amounts Culcasi "shall become legally obligated to pay as damages." Courts have construed this language to limit coverage to tort liability only. (*Fragomeno* v. *Insurance Co. of the West* (1989) 207 Cal.App.3d 822, 828 [255 Cal.Rptr. 111]; *Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308, 1317 [241 Cal.Rptr. 427]; *Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988, 997-998 [216 Cal.Rptr. 796]; *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp.* (1979) 93 Cal.App.3d 601, 610-611 [155 Cal.Rptr. 870].) Thus, we agree with the trial court's conclusion that Aim had no duty to defend Culcasi against an action for breach of contract.

■ However, we disagree with the trial court's conclusion that Grijalva's complaint sounds only in contract. The complaint clearly purports to state a cause of action for negligence, i.e., the breach of a duty of care.

■ Generally, "[a] person who has not created a peril is ordinarily not liable in tort merely for failure to take affirmative action to assist or protect another, no matter how great the danger in which the other is placed, or how easily he could be rescued, unless there is some *relationship* between them which gives rise to a duty to act." (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 858, p. 220, and cases cited there, italics in original.) However, there is an exception to this rule based on a *voluntary* or *gratuitous undertaking*. (*Id.*, § 868, p. 234, and cases cited there; *Bloomberg* v. *Interinsurance Exchange* (1984) 162 Cal.App.3d 571, 575 [207 Cal.Rptr. 853]; *Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232, 238 [60 Cal.Rptr. 510, 430 P.2d 68].)

Particularly instructive here is *Valdez* v. *Taylor Automobile Co.* (1954) 129 Cal.App.2d 810 [278 P.2d 91]. There, the defendant, a car dealer, advertised that the purchase price of a car would include the cost of a premium on a liability insurance policy for the new owner. (*Id.* at p. 812) Plaintiff bought a car and informed the salesman he wanted "full coverage insurance to protect myself" and "that covers up the next party in case you have an accident." (*Ibid.*) The salesman said he would obtain this type of insurance and prepared the various documents for the sale and insurance. (*Id.* at p. 813.)

The plaintiff was in a car accident, in which others were injured. (*Valdez, supra,* 129 Cal.App.2d at p. 814.) They sued, and the plaintiff tendered his defense to the car dealer. It declined, and a money judgment was rendered against the plaintiff. (*Ibid.*) He then sued the dealer for failing to obtain insurance for him, asserting causes of action for, among other things, breach of contract, negligence, and fraud. (*Id.* at p. 812.) The jury apparently rejected plaintiff's contract claim, but nevertheless found in his favor. (*Id.* at p. 815.)

On appeal, the car dealer claimed that since the jury found there was no contract to obtain the insurance the plaintiff had requested, it had no duty to procure such insurance; and in the absence of a contractual duty, plaintiff could not recover for the dealer's negligent failure to do so. (*Valdez, supra,* 129 Cal.App.2d at p. 817.) The appellate court disagreed, stating, "It is well established that a person may become liable in tort for negligently failing to perform a voluntarily assumed undertaking even in the absence of a contract so to do. A person may not be required to perform a service for another but he may undertake to do so—called a voluntary undertaking. In

such a case the person undertaking to perform the service is under a duty to exercise due care in performing the voluntarily assumed duty, and a failure to exercise due care is negligence. Dean Prosser says, '[I]f the defendant enters upon an affirmative course of conduct affecting the interests of another, he is regarded as assuming a duty to act, and will thereafter be liable for negligent acts or omissions,' and 'If the defendant receives the plaintiff's property or papers, and undertakes, without consideration, to obtain insurance, . . . he assumes a duty to use proper care in the performance of the task . . . . In many cases the court has laid stress upon the fact that the plaintiff has relied upon the conduct of the defendant to his damage, and has indicated that this is essential to liability. Notwithstanding an early New York case to the contrary, there is authority that where the defendant has reason to expect such reliance to the plaintiff's detriment, even a mere gratuitous promise will be enough to create a duty, for the breach of which a tort action will lie.' " (*Id.* at pp. 817-818; see also *Smith* v. *Minnesota Mut. Life Ins. Co.* (1948) 86 Cal.App.2d 581, 585 [195 P.2d 457]; *Stark* v. *Pioneer Casualty Co.* (1934) 139 Cal.App. 577, 580 [34 P.2d 731]; Annot. (1953) 32 A.L.R.2d 487, 511-517, and Later Case Service.)

In this case, Grijalva's complaint alleges that she entrusted her health plan application and supporting documents to Culcasi, who told her she would be properly enrolled in the plan, accepted her papers, and undertook the task of forwarding them to the insurance company. Culcasi concedes that he undertook this particular task. Grijalva further alleges that Culcasi "negligently breached his fiduciary duty to her by failing to properly complete her enrollment in the plan despite his assurances that she was so enrolled."

These allegations state a cause of action for negligence based on Culcasi's alleged breach of his duty to perform with due care the task he undertook and upon which Grijalva relied. That Culcasi may or may not also have had a *contractual* duty to send Grijalva's health plan application to the insurer is irrelevant, for his duty to perform it with reasonable care independently arose when volunteered to do it.[2] (Cf. *Nidiffer* v. *Clinchfield R. Co.* (Tenn.Ct.App. 1980) 600 S.W.2d 242 [10 A.L.R.4th 1260] [although defendant had no contractual duty to procure adequate insurance for employees, voluntary assumption of task rendered it liable for tort damages for negligence].)

Aim cites *Fragomeno* v. *Insurance Co. of the West, supra,* 207 Cal.App.3d 822, *Insurance Co. of the West* v. *Haralambos Beverage Co., supra,* 195

---

[2] Grijalva need not prove a fiduciary relationship with Culcasi to recover under the theory of a negligent performance of a voluntary undertaking. Hence, her allegation that Culcasi breached a "fiduciary duty" may be disregarded as surplusage.

Cal.App.3d 1308, *Fireman's Fund Ins. Co.* v. *City of Turlock, supra*, 170 Cal.App.3d 988, and *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp., supra*, 93 Cal.App.3d 601 in support of the trial court's ruling that Grijalva's recovery is dependent on proving the existence of a contract. These cases are distinguishable. Although they support the conclusion that the Policy does not cover contractual liability, none involve a complaint that stated both contract and independent tort causes of action. Rather, the complaints in those cases contained claims based *solely* on alleged breaches of contractual duties.

### The Duty to Defend

The seminal case on when an insurer's duty to defend arises is *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168]. There, a third party sued the insured, alleging an intentional assault. Thereafter, the insured sued his insurer for failing to defend him in the third party action. The type of injuries suffered were clearly covered under the policy, but the insurer claimed it had no duty to defend because of an exclusion for bodily injury intentionally caused by the insured. Our Supreme Court disagreed on two separate grounds.

The court first concluded that since the damages were the type covered by the policy, the broad language setting forth the insurer's duty to defend reasonably led the insured to expect a defense. Moreover, since the exclusionary clause upon which the insurer relied was ambiguous and not sufficiently conspicuous, plain and clear to have negated the reasonableness of the insured expectations, the insurer had a duty to perform according to the language of the policy and the reasonable expectations it gave rise to. (*Gray, supra*, 65 Cal.2d at pp. 267-275.)

The court's second ground was based on the rule that an insurer must defend a suit which *potentially* seeks damages within the coverage of the policy. (65 Cal.2d at p. 275.) " '[T]he ultimate question is whether the *facts* alleged do fairly apprise the insurer that plaintiff is suing the insured upon an occurrence which, if his allegations are true, gives rise to liability of insurer to insured under the terms of the policy.' (Italics added.) [Citations.] The corollary [is that] the insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." (*Id.* at p. 276, fn. 15.)

The court explained that "[s]ince modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the *facts* which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty

to defend its insured whenever it ascertains *facts* which give rise to the *potential of liability* under the policy." (*Gray, supra*, 65 Cal.2d at pp. 276-277, italics added.)

Since in *Gray* the complaint and the facts known to the insurer reasonably disclosed the potential for a judgment for damages against the insured based on his *nonintentional* conduct, damages which would clearly fall within the coverage of the insurance policy, the insurer had a duty to defend. (*Gray, supra*, 65 Cal.2d at pp. 276-277.)

### Culcasi's Reasonable Expectation of a Defense

■ Whether an insured's expectation of a defense is reasonable is a question of law. (Cf. *Dyer v. Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1549 [259 Cal.Rptr. 298].)

■ As noted above, the Policy covers only "property damage" and "bodily injury."

In her complaint, Grijalva did not allege any sort of property damage. Rather she sought, among other things, "payment of medical bills which would have, except for the negligence of Defendant have been paid by the group health insurance plan in an amount not less than $14,000." Grijalva's loss of insurance benefits constitutes economic injury, not property damage. (Cf. *Safeco Ins. Co. of America v. Andrews* (9th Cir. 1990) 915 F.2d 500 [economic injury due to misrepresentation not property damage].) Therefore, Culcasi reasonably could not have expected that Aim would defend him based on Grijalva's economic loss.

Although Grijalva's primary injury was economic, she also alleged that she suffered "great emotional distress." Thus the question arises, does the policy coverage for "bodily injury" cover a claim for only emotional distress.[3]

### The Meaning of "Bodily Injury"

■ Words in an insurance policy must be read in their ordinary sense. (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].) If the meaning a layperson would give to the policy language is unambiguous, then we must apply it. (*AIU Ins. Co.*

---

[3] Division One of the First District recently concluded that emotional distress is covered under a "bodily injury" provision only if it results from, or itself causes, physical injuries. However, the court granted a rehearing in that case. (*United Pacific Ins. Co. v. McGuire Co.* (Cal.App. A045445) rehg. granted Aug. 23, 1990.)■

v. *Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].) On the other hand, if the language is ambiguous, we first try to resolve it by interpreting the language "in the sense the promisor (i.e., the insurer) believed the promisee understood [it] at the time of formation." (*Ibid.*) If the ambiguity persists, we resolve it against the insurer. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra.*)

Whether language is ambiguous is a question of law. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra*, 41 Cal.3d 903, 912.) Ambiguity arises when policy language may reasonably be interpreted in two or more ways. (*Ibid.*) Courts, however, should not strain to find ambiguity where none reasonably exists. (See *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807 [180 Cal.Rptr. 628, 640 P.2d 764].)

The critical word in the term "bodily injury" is "bodily."

██ Webster's Third New International Dictionary (1981) defines "bodily" as "having a body or a material form: physical, corporeal." It considers the word synonymous with physical, corporeal, corporal, and somatic, explaining, "these words agree in referring to the human body and differ so little that they are often interchangeable. Bodily contrasts with *mental* or *spiritual*." (*Id*. at p. 245, italics in original; Webster's Ninth New Collegiate Dict. (1986) p. 164 [same].)

The Random House Dictionary of the English Language (2d ed. 1987) defines "bodily" as "1. of or pertaining to the body. 2. corporeal or material, as contrasted with spiritual or mental[.]" (*Id*. at p. 232.)

The American Heritage Dictionary (2d College ed. 1982) defines "bodily" as "*adj*. 1. Of, pertaining to, within, or exhibited by the body: *bodily organs*. 2. Physical as opposed to mental or spiritual: *bodily welfare. adv*. 1. In the flesh; in person: *bodily but not mentally present*." (*Id*. at p. 193, italics in original.)

Black's Law Dictionary (6th ed. 1990) defines "bodily" as "Pertaining to or concerning the body; of or belonging to the body or the physical constitution; not mental, but corporeal." (*Id*. at p. 175; see Ballentine's Law Dict. (3d ed. 1969) p. 144 [same]; West's Legal Thesaurus/Dict. (1986) p. 97 [same].)

Such definitional unanimity indicates that the ordinary and popular meaning of the word "bodily" does not reasonably encompass, and in fact suggests a contrast with, the purely mental, emotional, and spiritual.

Indeed, in *Cotton States Mut. Ins. Co.* v. *Crosby* (1979) 244 Ga. 456 [260 S.E.2d 860, 862-863], the Georgia Supreme Court reversed a finding that the term "bodily injury" was ambiguous. "The definition section of the policy provides that ' "bodily injury" means bodily injury, sickness or disease . . . .' While it is true that the two words are not defined in intricate detail, nevertheless, we have a rule of construction in Georgia [citation] which provides that words 'generally bear their usual and common signification . . . .' These words cannot fairly be said to have misled anyone. The definition offered in the policy, that is that 'bodily injury means bodily,' is a genuine attempt to explain words which need no explanation, and it would be an onerous imposition indeed to require insurance companies to go beyond that with each and every term used to provide the insured with an unnecessary lexicon."

Given the clear and ordinary meaning of the word "bodily," we find the term "bodily injury" unambiguous. It means physical injury and its consequences. It does not include emotional distress in the absence of *physical* injury.[4]

Some California cases suggest that emotional distress might be "bodily injury."

In *Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 538, footnote 8 [226 Cal.Rptr. 435], the insurer conceded that emotional distress alleged in a complaint for fraud constituted bodily injury within the meaning of the policy. In *Westfield Ins. Co.* v. *TWT, Inc.* (N.D.Cal. 1989) 723 F.Supp. 492, 495, the insurer did not dispute that emotional distress was bodily injury within the meaning of the term in primary and excess insurance policies presumably because the excess policy explicitly included it. These cases did not address the issue before us, and, therefore, neither is

---

[4]Culcasi asserts that the policy defines "bodily injury" as "bodily injury, sickness or disease." He does not provide a record reference to support this assertion of fact. (Cal. Rules of Court, rule 15 (a)). Moreover, our review of the policy before the trial court and included in record on appeal does not reveal this definition. In the absence of an adequate record and/or record references to support Culcasi's assertion, we need not consider this purported definition and argument based thereon. (See 9 Witkin, Cal.Procedure (3d ed. 1985) Appeal, §§ 418, 474, pp. 415-417, 466-467.)

We observe that in its motion for summary judgment, Aim quoted this definition but also failed to provide documentary support for it. Even if this purported definition were properly before us, however, our analysis would remain unchanged. In this definition, "bodily" modifies not only "injury," but also "sickness" and "disease." (See *E-Z Loader Boat Trailers* v. *Travelers Indem.* (1986) 106 Wn.2d 901 [726 P.2d 439, 443]; see *Aetna Cas. & Sur. Co.* v. *First Sec. Bank of Bozeman* (D.Mont. 1987) 662 F.Supp. 1126, 1128; *Cotton States Mut. Ins. Co.* v. *Crosby* (1979) 244 Ga. 456 [260 S.E.2d 860, 862-863]; *Rolette County* v. *Western Cas. & Sur. Co.* (D.N.D. 1978) 452 F.Supp. 125, 129-130.) Thus, the policy covers injury, sickness, and/or disease where they have physical manifestations or consequences.

authority for a conclusion one way or the other. (*Saberi* v. *Bakhtiari* (1985) 169 Cal.App.3d 509, 516, fn. 6 [215 Cal.Rptr. 359].)

In *Dyer* v. *Northbrook Property & Casualty Ins. Co.*, *supra*, 210 Cal.App.3d 1540, 1546, the court stated in dicta that "several cases" define "bodily injury" arising from wrongful termination to include harm caused by emotional distress. This statement implies that nonphysical harm caused by emotional distress is nevertheless "bodily injury." However, the court cited only two cases: *Abellon* v. *Hartford Ins. Co.* (1985) 167 Cal.App.3d 21 [212 Cal.Rptr. 852] and *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932 [160 Cal.Rptr. 141, 603 P.2d 58]. Neither remotely supports the court's statement.

*Agarwal* v. *Johnson*, *supra*, 25 Cal.3d 932 does not discuss the tort of wrongful termination, the meaning of the term "bodily injury" as used in an insurance policy, or whether emotional distress without physical manifestation or injury constitutes bodily injury.

In *Abellon* v. *Hartford Ins. Co.*, *supra*, 167 Cal.App.3d 21 a divided court concluded that a wife's loss of consortium *could* be an independent bodily injury under an insurance policy that covered "bodily injury," *if* the loss of consortium were accompanied by emotional distress which resulted in bodily injury. (*Id.* at pp. 26-32.) The court held that under such circumstances the wife's recovery would not be limited to the "per person" coverage limitation applicable to her husband. (*Id.* at pp. 25-30; but see dissenting opinion of Lewis, J., in *Abellon* v. *Hartford Ins. Co.*, *supra*, 167 Cal.App.3d 21, 33-35; see generally, Annot. (1986) 46 A.L.R.4th 735 and later cases (1990 pocket supp.) pp. 15-17.)

Although the court opined that it is difficult to distinguish between mental and physical injuries (*Abellon* v. *Hartford Ins. Co.*, *supra*, 167 Cal.App.3d at p. 27), it did not suggest that emotional distress in the absence of physical injury constitutes "bodily injury" as that term is used in an insurance policy.[5]

In *Keating* v. *National Union Fire Ins. Co.* (C.D.Cal. 1990) 754 F.Supp. 1431, the court discussed whether emotional distress is "bodily injury."

---

[5] It should also be noted that the distinction between purely emotional and physical injuries is important in a related context. Namely, it underlies the determination concerning whether an employee may sue for intentional infliction of emotional distress suffered at work or whether workers' compensation provides his or her exclusive remedy. (See *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 151, 153, 156 [233 Cal.Rptr. 308, 729 P.2d 743]; *Green* v. *City of Oceanside* (1987) 194 Cal.App.3d 212, 224-225 [239 Cal.Rptr. 470]; *Renteria* v. *County of Orange* (1978) 82 Cal.App.3d 833, 840, 842 [147 Cal.Rptr. 447].)

There, the court acknowledged the holding in *United Pacific Ins. Co.* v. *McGuire Co.* (Cal.App. A045445) rehg. granted Aug. 23, 1990) (see *ante*, fn. 3, p. 218)* but noted that a rehearing had been granted and opined that "at least for the moment, [the] opinion is of questionable value as precedent." (*Keating, supra,* 754 F.Supp. 1431.)

Notwithstanding the *United Pacific* case, the court in dicta opined that previous cases implied that even pure emotional distress would constitute bodily injury. Consequently, "it would appear that allegations of emotional distress would be sufficient to trigger a defense under [a policy covering 'bodily injury']." (*Keating, supra,* 754 F.Supp. 1431.)

In support of this view, the court cited *Abellon* v. *Hartford Ins. Co.,* *supra,* 167 Cal.App.3d 21, and *Employers Cas. Ins. Co.* v. *Foust* (1972) 29 Cal.App.3d 382 [105 Cal.Rptr. 505], both of which Culcasi also relies on.

As noted above, *Abellon* v. *Hartford Ins. Co., supra,* 167 Cal.App.3d 21 does not suggest that emotional distress without physical manifestation or injury constitutes "bodily injury." Nor does *Employers Cas. Ins. Co.* v. *Foust, supra,* 29 Cal.App.3d 382. There, the court held that the term "bodily injury" in an insurance policy covers "bodily or physical injury even where such injury is proximately caused, not by direct collision, but by emotional distress induced directly or indirectly by such collision." (*Id.* at p. 387.) Moreover, because the insurer was liable for *"all damages . . .* arising out of bodily injury," the policy covered the accompanying emotional distress. (*Ibid.,* italics added.)

Neither *Abellon* nor *Employers Casualty Insurance* suggests that emotional distress unaccompanied by physical injury constitutes "bodily injury."

Returning to *Keating,* we further note the complaint in that case "expressly allege[d] both 'emotional and physical distress' and 'impairment of health.'" (*Keating, supra,* 754 F.Supp. 1431.) Under the circumstances, the court concluded that even if the "bodily injury" provision of the policy requires some physical injury, the plaintiffs' claims of physical distress and impairment of health were sufficient to show such injury.

In the instant case, the allegations in Grijalva's complaint do not allege *any* physical injury, distress, or impairment. Thus, *Keating* is distinguishable on its facts.

In addition to *Abellon* and *Employers Casualty Insurance,* Culcasi also cites *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167

---

* See Reporter's Note, *ante,* page 218.

Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518] and *Vanoni* v. *Western Airlines* (1967) 247 Cal.App.2d 793 [56 Cal.Rptr. 115].

In *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, the court held that a husband may maintain a tort action for the emotional distress caused by a negligent diagnosis of his wife's physical condition regardless of whether he suffers actual physical injury. (*Id.* at pp. 923, 928, 932.) In so holding, the court rejected the previous rule that physical injury was required to recover damages for emotional distress in negligence actions. (*Id.* at pp. 924-931.) It noted that the primary purpose of the rule was to screen "feigned injuries and false claims." (*Id.* at p. 925.) However, since the interest in freedom from negligently inflicted emotional distress is entitled to independent protection, the purpose of the rule is not justified because it permits recovery where the physical injury is trivial and mechanically denies court access to plaintiffs who may have valid, provable claims. (*Id.* at pp. 928-929.)

The court observed that the "border between physical and emotional injury is not clearly delineated" and the distinction between physical and psychological injury clouds the real issue, which is one of proof: has the plaintiff suffered a serious and compensable injury. (*Molien, supra,* 27 Cal.3d at pp. 929-930.) Since the "physical injury" requirement screens claims at the pleading stage, it tended to usurp the jury's fact-finding function. (*Ibid.*) The court opined that emotional distress claims were capable of verification by the general standard of proof required to support a claim. (*Ibid.*)

In *Vanoni* v. *Western Airlines, supra,* 247 Cal.App.2d 793, the court applied the rule requiring physical harm to recover for emotional distress but found an allegation that the plaintiffs suffered "severe shock to [their] nerves and nervous system[s]" sufficient to state physical injury so as to overcome a general demurrer. (*Id.* at p. 797.)

In support of its conclusion, the court quoted *Sloane* v. *Southern Cal. Ry. Co.* (1896) 111 Cal. 668, 680 [44 P. 320], where the court observed that "'nervous shock or paroxysm, or a disturbance of the nervous system, *is distinct from mental anguish,* and falls within the physiological, rather than the psychological, branch of the human organism.'" (*Vanoni, supra,* 247 Cal.App.2d at p. 796, italics added.)

*Molien* and *Vanoni* indicate, among other things, that (1) emotional distress may or may not involve physical injury, (2) physical and emotional well-being are equally entitled to protection from intentional and negligent impairment, and (3) physical injury is no longer required to recover

damages for emotional distress in tort actions. However, they do not imply that emotional distress by itself is physical or bodily injury or that it automatically causes such injury.

Our research reveals that courts in numerous other jurisdictions have considered the precise issue before us. Not surprisingly, the overwhelming majority have reached the same conclusion we have. (See, e.g., *Kema Steel, Inc.* v. *Home Ins. Co.* (1986) 153 Ariz. 315 [736 P.2d 798, 799] [Ariz.]; *United States Fidelity and Guaranty Co.* v. *Shrigley* (W.D.Ark. 1939) 26 F.Supp. 625, 628 [Ark.]; *Presidential Hotel* v. *Canal Ins. Co.* (1988) 188 Ga.App. 609 [373 S.E.2d 671, 672] [Ga.]; *Grant* v. *North River Ins. Co.* (N.D.Ind. 1978) 453 F.Supp. 1361, 1367 [Ind.]; *Dahlke* v. *State Farm Mut. Auto. Ins. Co.* (Iowa 1990) 451 N.W.2d 813, 815 [Iowa]; *Nickens* v. *McGehee* (La.Ct.App. Cir.1966) 184 So.2d 271, 278 [La.]; *Allstate Ins. Co.* v. *Diamant* (1988) 401 Mass. 654 [518 N.E.2d 1154, 1156-1157] [Mass.]; *Farm Bureau Mut. Ins. Co. of Michigan* v. *Hoag* (1984) 136 Mich.App. 326 [356 N.W.2d 630, 633] [Mich.]; *Mutual Serv. Cas. Ins.* v. *Co-Op Supply, Inc.* (D.Mont. 1988) 699 F.Supp. 1438, 1440 [Mont.]; *Artcraft* v. *Lumberman's Mut. Cas. Co.* (N.H. 1985) 497 A.2d 1195, 1196 [N.H.]; *Lumbermen's* v. *United Serv. Auto.* (1987) 218 N.J.Super. 492 [528 A.2d 64, 65-68] [N.J.]; *Rolette County* v. *Western Casualty & Surety Co.*, *supra*, 452 F.Supp. 125, 130 [N.D.]; *Mellow* v. *Medical Malpractice Ass'n* (R.I. 1989) 567 A.2d 367, 368 [R.I.]; *Guardian Life Ins. Co. of America* v. *Richardson* (Tenn. 1939) 129 S.W.2d 1107, 1115 [Tenn.]; *Bituminous Fire & Marine Ins. Co.* v. *Izzy Rosen's Inc.* (6th Cir. 1974) 493 F.2d 257, 261 [Tenn.]; *American & For. Ins.* v. *Church Sch., Diocese of Va.* (E.D.Va. 1986) 645 F.Supp. 628, 632 [Va.]; *E-Z Loader Boat Trailers* v. *Travelers Indem.*, *supra*, 106 Wn.2d 901 [726 P.2d 439, 443] [Wash.]; *St. Paul Fire & Marine Ins.* v. *Campbell Cty. School* (D.Wyo. 1985) 612 F.Supp. 285, 287 [Wyo.]; see also *Allstate Ins. Co.* v. *McCranie* (S.D.Fla. 1989) 716 F.Supp. 1440, 1443; *Kufalk* v. *Hart* (N.D.Ill. 1986) 636 F.Supp. 309, 311 [Ill.]; *Tomlinson* v. *Skolnik* (1989) 44 Ohio St.3d 11 [540 N.E.2d 716, 719] [Ohio]; *E.E.O.C.* v. *Southern Pub. Co., Inc.* (S.D.Miss. 1988) 705 F.Supp. 1213, 1219; *Western Cas. & Sur. Co.* v. *Waisanen* (D.S.D. 1987) 653 F.Supp. 825, 833 [S.D.].)

In general, courts find that "bodily injury" is unambiguous; it is more restrictive than "personal injury," which includes emotional injury; and, therefore, it is limited to *physical* injury, sickness, or disease and their consequences. (See, e.g., *Allstate Ins. Co.* v. *Diamant, supra*, 401 Mass. 654 [518 N.E.2d 1154, 1156-1157]; *Artcraft* v. *Lumberman's Mut. Cas. Co.*, *supra*, 497 A.2d 1195, 1196.)

We acknowledge and discuss decisions to the contrary.

In *Morrison Assur. Co.* v. *North American Reinsurance* (N.D.Ala. 1984) 588 F.Supp. 1324, 1327, the court did not discuss whether the insurance policy was ambiguous but simply construed it against the insurer and concluded without discussion or citation to any authority that mental anguish was "sickness" and/or "disease," and, therefore covered under the policy.

In *Loewenthal* v. *Sec. Ins. Co. of Hartford* (1982) 50 Md.App. 112 [436 A.2d 493, 499], the court concluded without discussion or authority that emotional distress was bodily injury. (But see *Daley* v. *United Services* (1988) 312 Md. 550 [541 A.2d 632, 633-636] [solatium injury, which includes emotional distress, is not bodily injury].)

Neither *Morrison* nor *Loewenthal* is very persuasive authority.

In *Lavanant* v. *General Acc. Ins. Co.* (1990) 164 A.D.2d 73 [561 N.Y.S.2d 164, 167-168], the court interpreted the policy language against the insurer and found emotional anguish, even in the absence of physical touching, to be "sickness" within the policy definition of "bodily injury." To support its conclusion the court cited, in addition to *Morrison Assur. Co.* v. *North American Reinsurance, supra*, 588 F.Supp. 1324, *Loewenthal* v. *Sec. Ins. Co. of Hartford, supra*, 50 Md.App. 112 [436 A.2d 493, 499], and *NPS Corp.* v. *Insurance Co. of North America* (1986) 213 N.J.Super. 547 [517 A.2d 1211], which held that "bodily injury" includes the emotional consequences of a sexual battery. (But cf. *Lumbermen's* v. *United Service Auto., supra*, 218 N.J.Super. 492 [528 A.2d 64] [alleged defamation including great emotional distress not "bodily injury"].) The court also cited on *County of Chemung* v. *Hartford Cas. Ins. Co.* (1985) 130 Misc.2d 648 [496 N.Y.S.2d 933, 935], where the court held that "bodily injury" covered all damages resulting from physical abuse, including pain and suffering.

The authorities cited by the *Lavanant* court do not lead us to its conclusion. Moreover, since "bodily injury" is, in our view, unambiguous, we do not interpret the term against Aim. For this latter reason, we are also unpersuaded by another New Jersey case, *Wolfe* v. *State Farm Ins. Co.* (1988) 224 N.J.Super. 348 [540 A.2d 871, 873-874], where the court found "bodily injury" to be ambiguous and, therefore, construed it against the insurer to include a family's emotional distress resulting from the death of a member by carbon monoxide poisoning.

In *State Farm Mut. Auto. Ins. Co.* v. *Ramsey* (1988) 295 S.C. 349 [368 S.E.2d 477, 478], the court held that emotional distress was covered as "bodily injury." However, it relied on tort cases, which recognized emotional well-being as an interest worthy of protection. The court did not discuss

the language of the insurance policy or the distinction between tort damages for personal injuries and damages recoverable under an insurance contract. Thus, we find its analysis unconvincing.

In *Bloodworth* v. *Carroll* (La.Ct.App. 1984) 455 So.2d 1197, 1205, reversed on other grounds, (La. 1985) 463 So.2d 1313, the court stated without analysis that "bodily injury includes mental anguish, fright, distress and humiliation." As support, the court cited *Levy* v. *Duclaux* (La.Ct.App. 1975) 324 So.2d 1 and *Holcomb* v. *Kincaid* (La.Ct.App. 1981) 406 So.2d 646. However, neither case suggests that emotional distress absent physical manifestation or injury constitutes "bodily injury." Rather, in *Levy*, the court considered mental anguish that caused tears and hysteria, required medication, and impaired the ability to work to be a "sickness." (*Levy*, *supra*, 324 So.2d at p. 10.) In *Holcomb*, the court found humiliation and embarrassment causing rash, falling hair, weight loss, and symptoms of stroke to be "bodily injury." (*Holcomb*, *supra*, 406 So.2d at p. 648.)

Moreover, in *Albin* v. *State Farm Mut. Auto. Ins. Co.* (La.Ct.App. 1986) 498 So.2d 171, 174, another Louisiana court later reiterated the physical manifestation or injury requirement and held that in the absence thereof, one could not recover for loss of consortium even though such injury included emotional distress.

In sum, the cases discussed above that have reached a contrary conclusion do not dissuade us.

We now return to our discussion of Culcasi's reasonable expectation of coverage. Given the clear and unambiguous meaning of the term "bodily injury" and our conclusion that absent physical injury, emotional distress is not "bodily injury," we further conclude that Culcasi could not reasonably have expected Aim to provide a defense against Grijalva action based solely on her allegations of emotional distress.[6]

---

[6] Many of the cases we have cited from other jurisdictions also concluded that the insurer had no duty to defend a claim against the insured for emotional distress. (See, e.g., *Kema Steel, Inc.* v. *Home Ins. Co.*, *supra*, 153 Ariz. 315 [736 P.2d 798, 799]; *United States Fidelity and Guaranty Co.* v. *Shrigley*, *supra*, 26 F.Supp. 625, 628; *Presidential Hotel* v. *Canal Ins. Co.*, *supra*, 188 Ga.App. 609 [373 S.E.2d 671, 672]; *Farm Bureau Mut. Ins. Co. of Michigan* v. *Hoag*, *supra*, 136 Mich. 326 [356 N.W.2d 630, 633]; *Mutual Serv. Cas. Ins. Co.* v. *Co-op Supply, Inc.*, *supra*, 699 F.Supp. 1438, 1440; *Lumbermen's* v. *United Serv. Auto.*, *supra*, 218 N.J.Super. 492 [528 A.2d 64, 65-68]; *Rolette County* v. *Western Casualty & Surety Co.*, *supra*, 452 F.Supp. 125, 130; *Mellow* v. *Medical Malpractice Ass'n*, *supra*, 567 A.2d 367, 368; *American & For. Ins.* v. *Church Sch., Diocese of Va.*, *supra*, 645 F.Supp. 628, 632; *E-Z Loader Boat Trailers* v. *Travelers Indem.*, *supra*, 106 Wn.2d 901 [726 P.2d 439, 443]; *St. Paul Fire & Marine Ins.* v. *Campbell Cty. School*, *supra*, 612 F.Supp. 285, 287.)

## Potential Liability

■  As noted above, the *facts* alleged in the complaint or known to the insurer determine whether it has a duty to defend an insured. (*Gray* v. *Zurich Insurance Co.*, *supra*, 65 Cal.2d at pp. 276-277.)

■  The allegation that Grijalva suffered economic injury because Culcasi negligently failed to forward her insurance application does not reasonably disclose any potential liability for "property damage."

We note that in his cross-complaint for declaratory relief, Culcasi alleges that (1) Grijalva's application papers were her personal property, (2) she alleged that he negligently failed to transmit them, (3) this allegation includes the possibility that he "negligently lost, destroyed, or misdirected said application," and (4) loss or destruction of the application would constitute "property damage" within the meaning of the policy.

■  Culcasi does not reiterate this claim on appeal, and, therefore has waived it. (9 Witkin, Cal. Procedure, *supra*, Appeal, § 479, pp. 469-471, and cases cited there.)  ■  Moreover, this claim is frivolous. The alleged loss or destruction of a piece (or pieces) of *paper* Grijalva entrusted to Culcasi represents trivial, if not nonexistent, property damage. Finally, we disagree that the complaint reasonably apprises Aim of potential liability for the loss or destruction of Grijalva's paper.

We next conclude that Grijalva's claim of "great emotional distress" does not reasonably disclose the potential liability for "bodily injury."

■  Emotional or mental injuries are not inextricably linked to bodily injury. (*Interstate Fire & Cas. Co.* v. *Stuntman, Inc.* (9th Cir. 1988) 853 F.2d 751, 752-753.) The one, especially emotional distress, does not automatically suggest the existence of the other. And one can recover for emotional distress in the absence of a physical injury or manifestation. (See 6 Witkin, Summary of Cal. Law, *supra*, Torts, § 852, pp. 210-213.)  ■ Consequently, the mere fact that Grijalva allegedly suffered emotional distress, standing alone, does not, in our view, reasonably suggest that she also suffered "bodily injury." Nor does Culcasi suggest that Aim was aware of facts indicating Grijalva suffered some physical injury.

Under the circumstances, therefore, the record discloses that Aim was not apprised of any facts suggesting "bodily injury" which might have rendered it potentially liable for Grijalva's alleged emotional distress. (Compare *Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213 [169 Cal.Rptr. 278] [no duty to defend where allegations of economic injury fail

to raise potential liability under policy covering property damage] with *CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598 [222 Cal.Rptr. 276] [duty to defend where allegations that defendant stole and misused property interest and trade secrets and made misrepresentations to eliminate other competition were arguably within policy coverage for piracy, unfair competition, and idea misappropriation].)

## Conclusion and Disposition

In light of our discussion and review of the undisputed facts, we conclude there were no triable issues of fact concerning whether Aim had any potential liability for property damage or damages for bodily injury under the Policy. Rather, the record negates the existence of a reasonable expectation of coverage or potential liability. Consequently, Aim has no duty to defend Culcasi against Grijalva's complaint. ▆▆ And since the duty to defend is broader than the duty to indemnify (*Giddings* v. *Industrial Indemnity Co.*, *supra*, 112 Cal.App.3d 213, 217), it follows that Aim could have no duty to indemnify Culcasi if Grijalva should prevail. ▆▆ ▆▆ ▆▆ ▆▆ In sum, therefore, we hold that the trial court properly granted Aim's motion for summary judgment.[7]

The judgment is affirmed.

Elia, J., and Bamattre-Manoukian, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 20, 1991. Mosk, J., and Broussard, J., were of the opinion thta the petition should be granted.

---

[7] Although we reject the trial court's reasoning for granting Aim's motion, we may nevertheless find it to be the correct judicial action. As our Supreme Court explained in *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10], " 'The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " (*Id.* at pp. 18-19, quoting *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)