951 F.2d 359
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jerry CONRAD, Plaintiff-Appellant,
v.
FEDERAL INSURANCE COMPANY, et al., Defendant-Appellee.
 No. 90-56220.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1991.
Decided Dec. 20, 1991.
 
 Before SNEED, BEEZER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We consider an insurer's duty to defend an additional insured who was the defendant in a prior action brought by the named insured. Conrad appeals a summary judgment entered against him on the grounds that his claim was not within the scope of basic coverage under the policy and was plainly and clearly excluded from the policy. We affirm.
 
 
 3
 * Compare Data supplies computer software to insurance agents. From 1982 to 1987 Conrad was President and a director of Compare Data. During that time Conrad also controlled other business entities. Compare Data filed an action against Conrad for alleged improprieties during his stewardship.[1] This action resulted in a judgment against Conrad of $2,409,648.34 for fraud, punitive damages and pre-judgment interest.[2]
 
 
 4
 The complaint in the prior action alleged: (1) diversion of assets and human resources without reimbursement, (2) occupation of space and use of equipment without paying rent, (3) misappropriation of assets, (4) conversion of funds, and (5) failure to reimburse for expenses. Federal Insurance Company (Federal), Compare Data's general liability insurer, investigated the prior case and concluded that it was based on four key transactions: (1) a $35,000 payment to one of Conrad's other entities for services never performed, (2) deposit of a check drawn to Compare Data in an account of one of Conrad's other entities, (3) Conrad's personal purchase, while owing a fiduciary duty to Compare Data, of a substantial interest in a growth company, and (4) his sale of that interest at an enormous profit eight months later. We will assume that these facts allege both a usurpation of corporate opportunities and a diversion of resources leading to a loss of use of property by Compare Data.
 
 
 5
 Compare Data had two general liability insurance policies with Federal. One policy covered the period October 15, 1982 to October 15, 1985; the other the period October 15, 1985 to October 8, 1986, when the policy was cancelled. Conrad sought coverage and a legal defense under the policies as an additional insured. Federal concluded that Compare Data's claim against Conrad was for usurpation of corporate opportunities, which the policies did not cover. Federal declined to cover or to defend Conrad, and Conrad filed this action seeking a defense and coverage.
 
 II
 
 6
 Federal implies that we might not have jurisdiction because 28 U.S.C. § 1332(c)(1) might deprive the district court of jurisdiction. Congress enacted § 1332(c)(1) to prevent direct actions against diverse insurers in federal court when the injured party and the insured have the same citizenship.[3] We have found jurisdiction for a direct action by an injured party against an insurer for its tortious conduct in settlement negotiations. Beckham v. Safeco Ins. Co. of Am., 691 F.2d 898 (9th Cir.1982).
 
 
 7
 Conrad is not a victim attempting to circumvent the state court system by filing an action against an insurer but not against the wrongdoer. He files a contract-based claim, which includes allegations of tortious conduct in performance of that contract, against his alleged insurer. The district court had jurisdiction over this action, and so do we.
 
 III
 
 8
 We review a grant of summary judgment de novo. Viewing the evidence in a light most favorable to the nonmoving party, we determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). If a nonmovant bears the burden of proof on an issue, summary judgment is appropriate when he fails to make a showing sufficient to establish an essential element of his case. The movant need not negate the essential element. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When the movant carries his burden by pointing to a lack of support for essential elements upon which the nonmovant bears the burden of proof, the nonmovant must come forward with " 'specific facts showing that there is a genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added by opinion). We view the record taken as a whole to determine whether a genuine issue exists. Id. at 587.
 
 
 9
 An insured must show that his claim falls within the scope of basic coverage under the policy. Clauses identifying coverage are interpreted broadly. Garvey v. State Farm Fire & Casualty Co., 48 Cal.3d 395, 770 P.2d 704, 710, 257 Cal.Rptr. 292 (1989). Conrad thus bears the burden of showing that a genuine issue exists as to whether one of Federal's policies affords him either a legal defense or coverage.
 
 IV
 
 10
 The duty to defend is broader than the duty to indemnify. Aim Ins. Co. v. Culcasi, 229 Cal.App.3d 209, 280 Cal.Rptr. 766, 777 (1991). If Conrad cannot establish a duty to defend, the district court properly granted summary judgment. In Gray v. Zurich Ins. Co., 65 Cal.2d 263, 419 P.2d 168, 54 Cal.Rptr. 104 (1966), the court held that an insurer has a duty to defend if it ascertains facts (from its insured, a complaint or other sources) that potentially yield liability under the policy. The nature and kind of risk covered limits the duty to defend.[4] In Gray, the insurer had to defend because an ambiguous exclusionary clause did not contradict the insured's reasonable expectation of coverage. However, "[w]here the scope of basic coverage creates no potential liability under the policy, the courts may not use a strained construction to impose a liability upon an insurer that it has not assumed." Dyer v. Northbrook Property & Casualty Ins. Co., 210 Cal.App.3d 1540, 259 Cal.Rptr. 298, 302 (1989).
 
 
 11
 Under California law the first step in analyzing an insurance contract is determining whether the contested policy provision is clear and unambiguous. An ambiguity cannot be based on a strained reading of the provision. Only if the policy language is unclear does the court then consider whether the insured has a reasonable expectation of a defense. Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1365-66 (9th Cir.1991).
 
 
 12
 The insuring agreement defines the nature and kind of risk covered by the policy.[5] Federal promised to cover "property damage caused by an occurrence ..." and to "defend any suit against the insured seeking such damages." Property damage includes "loss of use ... caused by an occurrence." An occurrence is an "event ... which results in ... property damage." An event includes "continuous or repeated exposure to conditions." "Conditions" is not defined. To obtain a defense, Conrad must show that he is an insured against whom an injured party seeks damages because of a loss of use of property, which loss of use was due to an event.
 
 
 13
 Conrad asserts that Compare Data's loss of use of property occurred over a period of time. "[W]ords in an insurance policy must be read in their ordinary sense...." Producers Dairy Delivery Co. v. Sentry Ins. Co., 41 Cal.3d 903, 718 P.2d 920, 925, 226 Cal.Rptr. 558 (1986). Our ordinary understanding of the term "continuous or repeated exposure to [a] condition" would include, for example, either damage to a structure due to stress or erosion damage due to water seepage. Conrad's position must be that the event which resulted in Compare Data's loss of use was Compare Data's continuous or repeated exposure to a condition: Conrad's usurpation of corporate opportunities and his diversion of resources.
 
 
 14
 "[A] finding of ambiguity in policy language cannot be based on an unreasonable misunderstanding on the part of the insured." Id. Whether Conrad's interpretation of the policy is a reasonable understanding depends on what the "reasonable person in the position of an officer" would conclude. Id. We hold that the reasonable officer would understand that his diversion of corporate assets cannot be a continuous or repetitive condition for which a general liability policy provides coverage. Director and officer liability policies cover that nature and kind of risk. See Allstate Ins. Co. v. Interbank Fin. Servs., 215 Cal.App.3d 825, 264 Cal.Rptr. 25, 28 (1989) (clear bases of complaints revealed injuries that should have been covered under a professional liability policy, not a general business liability policy). Because the claim advanced by Conrad is not of the nature and kind of risk covered by the general liability policy, he has failed to show a genuine issue as to whether Federal's policy would potentially yield coverage. See Culcasi, 280 Cal.Rptr. at 777. The district court properly granted summary judgment against Conrad on Federal's duty to defend because Conrad's claim is not within the scope of basic coverage under the policy.[6]
 
 V
 
 15
 The district court properly granted summary judgment against Conrad on Federal's coverage obligation because the duty to defend is broader than the duty to indemnify. Id.
 
 VI
 
 16
 The district court's summary judgment is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Compare Data sued Conrad on a variety of theories: fraud and deceit, conversion, breach of fiduciary duty, breach of oral contract, breach of implied covenant of good faith and fair dealing, violation of Cal.Lab.Code § 2860, imposition of constructive trust and order of conveyance, intentional interference with economic relationship
 
 
 [2]
 Conrad filed a bankruptcy petition shortly thereafter
 
 
 [3]
 See Walter W. Jones, Jr., Annotation, What Constitutes "Direct Action" Within Proviso to 28 USCS § 1332(c) That for Purposes of Diversity Jurisdiction in Direct Action Against Liability Insurer in Which Insured Is not Joined as Party Defendant, Insurer Shall Be Deemed Citizen of State of Which Insured Is Citizen, 13 A.L.R.Fed. 398, 401 (1972)
 
 
 [4]
 The legality of the insured's conduct does not limit the duty to defend. Although an insurer may not indemnify its insured for certain illegal acts, it may still defend. Gray, 419 P.2d at 177
 
 
 [5]
 The parties make veiled references to uncertainty over which policy applies. Without deciding the issue, we analyze the policy language advanced by Conrad
 
 
 [6]
 Because Conrad has not shown any facts that would potentially yield coverage, we do not proceed to the question whether a plain and clear exclusionary clause also denies him a defense